UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

CALVIN POWELL,

                                          Plaintiff,

-against-

UNITED STATES OF AMERICA; United States Drug
Enforcement Agency ("DEA") Detectives SEAN
FOGARTY, JOHANNA SANTOS, and "JOHN and/or
JANE DOES" Nos. 1, 2, 3, etc., in their individual capacities;
THE CITY OF NEW YORK, a municipal entity; NEW
YORK CITY POLICE DEPARTMENT ("NYPD") Police
Officers JOHN DOHERTY, and "RICHARD and/or
RACHEL ROES Nos. 1, 2, 3, etc., in their individual
capacities; and Investigators and Officials of The Office Of
the Special Narcotics Prosecutor For the City Of New York
"STANLEY and/or SALLY SOES" Nos. 1, 2, 3, etc., in their
individual capacities,

                                          Defendants.

**19-CV-11351 (AKH)**

------------------------------------------------------------------------ X

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT JOHANNA SANTOS'
MOTION TO DISMISS THE COMPLAINT**

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, 26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiff Calvin Powell*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................iii

PRELIMINARY STATEMENT...........................................................................................1

STATEMENT OF FACTS...................................................................................................2

LEGAL STANDARD...........................................................................................................3

ARGUMENT........................................................................................................................4

    I.     PLAINTIFF'S CLAIMS ARE VIABLE UNDER *BIVENS*....................................4

          A.     The *Bivens* Inquiry..............................................................................4

          B.     Plaintiff's Claims Do Not Present a New Context
               Under *Bivens* ......................................................................................6

                1.     Plaintiff's false arrest claim does not present
                      a new *Bivens* context...........................................................6

                2.     Plaintiff's malicious prosecution claim does not present
                      present a new *Bivens* context..............................................9

                3.     Plaintiff's deprivation of liberty without due process
                      of law and denial of a fair trial by fabricating evidence
                      and withholding material exculpatory and impeachment
                      evidence claim does not present a new *Bivens* context..............10

                4.     Plaintiff's failure to intercede claim does not present
                      present a new *Bivens* context..............................................11

                  5.     Plaintiff's civil rights conspiracy claim does not present
                      present a new *Bivens* context..............................................12

           C     Even If Plaintiff's Claims Arise from a New Context, There Are
               Not Any Special Factors That Caution Against Extending *Bivens* ..........13

    II.     PLAINTIFF'S CLAIMS ARE SUFFICIENTLY PLED .......................................17

          A.     The Complaint Alleges Personal Involvement of Detective Santos..........17

           B.     The Complaint States A Claim for Malicious Prosecution...................19

1.      Detective Santos participated in initiating
the Plaintiff's prosecution………………..……...…………….…20

2.      The termination of Plaintiff's prosecution was favorable……….…21

3.      Detective Santos initiated Plaintiff's prosecution with malice…....23

C.      The Complaint Sufficiently States A Claim for Failure to Intercede……...24

D.      The Complaint Sufficiently States a Claim for Conspiracy……………….25

III.      DETECTIVE SANTOS IS NOT ENTITLED TO
QUALIFIED IMMUNITY……………………………………………………….26

CONCLUSION…………………………………………………………………..…………28

## TABLE OF AUTHORITIES

*Cases*                                                                                                          *Pages*

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) …………………………………….……………17

*Anderson v. Branen,*
    17 F.3d 552 (2d Cir. 1994)……………………...…………………….24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)………………………………………………19, 26

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011)………………………………………………....26

*Atuahene v. City of Hartford,*
    10 F. App'x. 33 (2d Cir. 2001)………………………………...……….19

*Barone v. United States,*
    722 F. App'x 57 (2d Cir. 2018)………………………………….……..9, 16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)…………………………………………………….4

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971)……………………………………………...…………….4, 6, 7

*Blount v. City of New York,* 15 Civ. 5599 (PKC)(JO),
    2019 U.S. Dist. LEXIS 34969 (E.D.N.Y. Mar. 5, 2019)………..……………..21, 22-23

*Brower v. Cty. of Inyo,*
    489 U.S. 593 (1989)……………………………………………….…8

*Bueno Diaz v. Mercurio,* 19 Civ. 1319 (AT),
    2020 U.S. Dist. LEXIS 38868 (S.D.N.Y. Mar. 5, 2020)…………………………6, 7, 15, 16

*Butler v. Hesch,* 16 Civ. 1540 (MAD)(CFH),
    2020 U.S. Dist. LEXIS 49437 (N.D.N.Y. Mar. 23, 2020)……………………....9

*Cameron v. City of N.Y.,*
    598 F.3d 50 (2d Cir. 2010)………………………………………………20

*Carlson v. Green,*
    446 U.S. 14 (1980)……………………………………………………14

*Castellar v. Caporale*, 04 Civ. 3402 (DGT),
    2010 U.S. Dist. LEXIS 91191 (E.D.N.Y. Sept. 2, 2010)………………………...….11

*Colon v. Coughlin*,
    58 F.3d 865 (2d Cir. 1995)……..…………………………………………....17

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001)…………………………………………………….......14

*Cuoco v. Moritsugu*,
    222 F.3d 99 (2d Cir. 2000)………………………………..……………11, 16

*Davis v. Kelly*,
    160 F.3d 917 (2d Cir. 1998)…………………………………………...…18

*Doe v. Cappiello*,
    758 F. App'x 181 (2d Cir. 2019)……………………………..…………27

*Dunaway v. New York*,
    442 U.S. 200 (1979)…………………….…………………………...…………7

*Farah v. Weyker*,
    926 F.3d 492 (8th Cir. 2019)……………………………………………9

*Fiedler v. Incandela*,
    222 F. Supp. 3d 141 (E.D.N.Y. 2016)…………………………...……20

*Fiorito v. Anderson*, 18 Civ. 506 (JFW)(KES),
    2019 U.S. Dist. LEXIS (C.D. Cal. Apr. 15, 2019)………….……………………...13

*Forney v. Forney*,
    96 F. Supp.3d 7 (E.D.N.Y. 2015)…………………………………………24

*Ganek v. Leibowitz*,
    874 F.3d 73 (2d Cir. 2017)……………………………………………10

*Gant v. Wallingford Bd. of Educ.*,
    69 F.3d 669 (2d Cir. 1995)…………………………………………3-4

*Gardner v. Murphy*,
    613 F. App'x 40 (2d Cir. 2015)………………………………………26

*Goldstein v. Pataki*,
    516 F.3d 50 (2d Cir. 2008)…………………………………………3

*Gonzalez v. City of Schenectady*,
　　728 F.3d 149 (2d Cir. 2013)……………………………...…………………….22

*Gonzalez v. Hasty*,
　　755 F. App'x 67 (2d Cir. 2018)……………………………………………….6

*Green v. Montgomery*,
　　219 F.3d 52 (2d Cir. 2000)………………………………………………….9, 16

*Helvig v. United States*, 18 Civ. 7939 (PSG),
　　2019 U.S. Dist. LEXIS 228444 (C.D. Cal. Oct. 1, 2019)…………………….13

*Hernandez v. Coughlin*,
　　18 F.3d 133 (2d Cir. 1994)……………………………………………...………4

*Hernandez v. Mesa*,
　　140 S. Ct. 735 (2020)……………………………………………….4-5, 13-14

*Hyman v. Abrams*,
　　630 F. App'x 40 (2d Cir. 2015)……………………………………………..26

*Hutchins v. Solomon*, 16 Civ. 10029 (KMK),
　　2018 U.S. Dist. LEXIS 169421 (S.D.N.Y. Sept. 29, 2018)…………………23 f. 2

*In re County of Erie*,
　　546 F.3d 222 (2d Cir. 2008)……………………………………………….26-27

*Jackson v. Seeward*, 11 Civ. 7733 (JCF),
　　2013 U.S. Dist. LEXIS 7733 (S.D.N.Y. Jan. 14, 2013)………………………24

*Jacobs v. Alam*,
　　915 F.3d 1028 (6th Cir. 2019)……………………………………..6, 10-11, 13, 16

*Lanning v. City of Glens Falls*,
　　908 F.3d 19 (2d Cir. 2018)……………………………………………………21

*Lehal v. Cent. Falls Det. Facility Corp.*, 13 Civ. 3923 (DF),
　　U.S. Dist. LEXIS 49477 (S.D.N.Y. Mar. 15, 2019)………………………...………7

*Llerando–Phipps v. City of New York*,
　　390 F. Supp. 2d 372 (S.D.N.Y. 2005)…………………………………….…..20

*Manganiello v. City of New York*,
　　612 F.3d 149 (2d Cir. 2010)……………………………………………...…23

*Martinez v. D'Agata*, 16 Civ. 44 (VB),
    2019 U.S. Dist. LEXIS 218107 (S.D.N.Y. Dec. 18, 2019)..................................8-9

*McKenna v. Wright*,
    386 F.3d 432 (2d Cir. 2004)...................................................................26

*Mejia v. City of New York*,
    119 F. Supp. 2d 232 (E.D.N.Y. 2000)......................................................11

*Miller v Cuccia*, 99-7088(L), 99-7122 (XAP),
    1999 U.S. App. LEXIS 30445 (2d Cir. Nov. 18, 1999)...................................22

*Mitchell v. City of New York*,
    841 F.3d 72 (2d Cir. 2016)....................................................................19

*Oliveras v. Basile*, 16 Civ. 9619 (KPF),
    2020 U.S. Dist. LEXIS 32014 (S.D.N.Y. Feb. 25, 2020)....................................8

*O'Neill v. Krzeminski*,
    839 F.2d 9 (2d Cir. 1988)......................................................................11

*Pangburn v. Culbertson*,
    200 F.3d 65 (2d Cir. 1999)....................................................................25

*Penree by Penree v. City of Utica, New York*,
    694 F. App'x 30 (2d Cir. 2017))..............................................................27

*Prado v. Perez*, 18 Civ. 9806 (JPO),
    2020 U.S. Dist. LEXIS 59220 (S.D.N.Y. Apr. 3, 2020).....................................12

*Provost v. City of Newburgh*,
    262 F.3d 146 (2d Cir. 2001).................................................................17-18

*Rivera v. Samilo*,
    370 F. Supp. 3d 362 (E.D.N.Y. 2019)........................................................12

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
    490 U.S. 477 (1989)............................................................................15

*Romani v. Sanofi S.A.*,
    899 F.2d 195 (2d Cir. 1990)..................................................................28

*Rosario v. City of New York*, 18 Civ. 4023 (LGS),
    2019 U.S. Dist. LEXIS 159771 (S.D.N.Y. Sept. 16, 2019)..................................21

*Sanabria v. Tezlof*, No. 11 Civ. 6578 (NSR),
    2016 U.S. Dist. LEXIS 107104 (S.D.N.Y. Aug. 12, 2016)..................................25

*Sanchez v. Bonacchi*,
    799 F. App'x 60 (2d Cir. 2020)..................................................................26

*Sanusi v. Dep't of Homeland Sec.*, 06 Civ. 2929 (SJ)(JMA),
    2014 U.S. Dist. LEXIS 44030 (E.D.N.Y. Mar. 31, 2014)...........................19

*Sarikaputar v. Veratip Corp.*, 17 Civ. 814 (ALC),
    2019 U.S. Dist. LEXIS 92436 (S.D.N.Y. Jun. 3, 2019)..............................19

*Sash v. United States*,
    674 F. Supp. 2d 531 (S.D.N.Y. 2009)......................................................11

*Saucier v. Katz*,
    533 U.S. 194 (2001)...............................................................................26

*Shannon v. Credit Agricole Sec.*, 17 Civ. 667 (AN),
    2018 U.S. Dist. LEXIS 48323, (S.D.N.Y. Mar. 22, 2018)...........................4

*Singer v. Fulton County Sheriff*,
    63 F.3d 110 (2d Cir. 1995).......................................................................8

*Smalls v. Collins,* 14 Civ. 2326 (CBA)(RML),
    2020 U.S. Dist. LEXIS 52213 (E.D.N.Y. Mar. 16, 2020)...........................22

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
    137 S. Ct. 1002 (2017)...........................................................................17

*Turkmen v. Hasty*,
    789 F.3d 218 (2d Cir. 2015)......................................................................6

*United States v. Craft*,
    535 U.S. 274 (2002)...............................................................................17

*Vincent v. Yelich*,
    718 F.3d 157 (2d Cir. 2013).....................................................................26

*Wright v. Smith*,
    21 F.3d 496 (2d Cir. 1994).......................................................................17

*Zahrey v. Coffey*,
    221 F.3d 342 (2d Cir. 2000)..........................................................10, 16, 27

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)……………………………….…………5, 6, 10, 11, 13-14, 15, 16

## PRELIMINARY STATEMENT

Calvin Powell ("Plaintiff") brings this action against Defendant Johanna Santos ("Detective Santos") to seek redress for her brazen violations of his constitutional rights that led to his false arrest and false imprisonment. By aiding in an arrest unsupported by probable cause, fabricating evidence, swearing to a false affidavit, and withholding exculpatory evidence, Detective Santos caused Plaintiff to suffer immense harm. In her motion to dismiss, Detective Santos argues that Plaintiff's claims (1) cannot be brought under *Bivens*; (2) fail to state a claim for three of the five alleged counts; and (3) are barred by the doctrine of qualified immunity. All of Detective Santos' arguments fail.

To vindicate his rights, Plaintiff uses the vehicle—*Bivens*—that the Supreme Court created nearly half a century ago to provide a remedy and serve as a deterrent to this very type of law enforcement abuse by federal officers. While Detective Santos argues that *Bivens* is off-limits here, she is incorrect. No amount of metamorphosis can change the fact that Plaintiff's claims against Detective Santos arise from the very conduct and context that *Bivens* and its progeny sought to address. Plaintiff's action against Detective Santos is a paradigmatic *Bivens* claim.

Likewise, Detective Santos's fixation on the fact that many of the allegations made against her are also made against other officers is misplaced. The fact that Detective Santos conspired to, and in fact did, violate Plaintiff's constitutional rights by acting in concert with confederate law enforcement officers does not relieve her of liability.

As for qualified immunity, Detective Santos erroneously argues that because she initially participated in a search pursuant to a warrant, her subsequent misconduct cannot constitute a clear constitutional violation. If this were the case, qualified immunity would more rightfully be called total immunity. One lawful and one unlawful act does not equal two lawful acts.

1

Thus, this Court should deny Detective Santos' motion to dismiss in its entirety.

## STATEMENT OF FACTS

For the past twenty years, Plaintiff has resided with his family in the first-floor apartment of the three-family apartment building he owns, located at 3410 Barker Avenue. Plaintiff's Complaint ("Compl.") (Dkt. No. 1) ¶ 25. Tenants live in the second and third-floor apartments and have done so for more than a decade. *Id.* ¶ 26-27.

On April 18, 2018, Detective Santos, along with other law enforcement officers, executed a search warrant for the first and second floors of 3410 Barker Avenue. *Id.* ¶¶ 50-55. Detective Santos and the other officers knew that the search warrant only authorized a search of the first and second-floor apartments. *Id.* ¶ 55-57. But when the search pursuant to the warrant failed to produce contraband or evidence of criminal activity, Detective Santos and the other officers conducted a warrantless and unlawful search of the third-floor apartment. *Id.* ¶¶ 55-58. During the unlawful search of the third-floor apartment, law enforcement officers discovered cocaine and related criminal evidence. *Id.* ¶ 61. Knowing that this evidence was discovered unlawfully, Detective Santos and the other officers conspired to falsely claim that they had found the drugs and other evidence in Plaintiff's possession within the scope of the search warrant. *Id.* ¶ 65. In the course of and in furtherance of this conspiracy, Detective Santos prepared knowingly false arrest paperwork, swore to an affidavit she knew to be false, withheld exculpatory information, and failed to intercede when Plaintiff's rights were clearly violated in her presence. *Id.* ¶¶ 69-70, 75-78, 157-58.

As the result of Detective Santos' actions, Plaintiff was arrested, prosecuted, and imprisoned in violation of his constitutional rights. *Id.* ¶¶ 142, 148, 155, 160. Months later, Plaintiff's counsel discovered that photographs taken by law enforcement officers during the

unlawful search, to show where the drugs and other evidence had been found, proved that, the evidence had been found in the third-floor apartment. *Id.* ¶¶ 102, 106. The prosecution denied this assertion and responded by impugning Plaintiff. *Id.* ¶¶ 102-03. The prosecution justified their position as supported by the continued insistence of Detective Santos, and other officers involved in the matter, that the evidence was seized within the scope of the warrant. *Id.* ¶¶ 103-04.

Upon a court-ordered inspection of 3410 Barker Avenue, the prosecution conceded that, contrary to the representations made by Detective Santos and other law enforcement officers, the drugs and other evidence had been seized from the third-floor apartment and dismissed all charges. *Id.* ¶¶ 107-09, 111. By the time Plaintiff was finally released from jail, he had spent approximately 140 days imprisoned. *Id.* ¶ 110. As a result of his incarceration, Plaintiff was unable to be at his father's side when he passed away and was prohibited from attending his funeral. *Id.* ¶ 114. Plaintiff's relationship with his family was also strained as they were only able to make infrequent visits. *Id.* Detective Santos' actions have caused, and continue to cause, Plaintiff to experience pain and suffering; severe mental anguish, emotional distress, and psychological damage; loss of family relationships; loss of property; loss of income; humiliation, indignities and embarrassment; and degradation.

On December 11, 2019, Plaintiff filed this action in federal court to seek monetary relief for these injuries.

## LEGAL STANDARD

When assessing a 12(b)(6) motion to dismiss, courts must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal quotation omitted). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether

the claimant is entitled to offer evidence to support the claims." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (internal quotation omitted). "The complaint may be dismissed only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Shannon v. Credit Agricole Sec.*, 17 Civ. 667 (AN), 2018 U.S. Dist. LEXIS 48323, at *5 (S.D.N.Y. Mar. 22, 2018) (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)). Thus, a plaintiff need only plead factual allegations that, when accepted as true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). If a plaintiff clears this low bar, the 12(b)(6) motion to dismiss must be denied.

## **ARGUMENT**

### I.   **PLAINTIFF'S CLAIMS ARE VIABLE UNDER *BIVENS***

Detective Santos erroneously contends that Plaintiff's claims require this Court to extend a *Bivens* remedy beyond the contexts in which it has been recognized and that special factors counsel against such an extension. Detective Santos' May 21, 2020 Memorandum of Law in Support of her Motion to Dismiss ("Def. Br.") at 6-12. None of Plaintiff's claims against Detective Santos require the extension of *Bivens*, and, even if they did, there are not any special factors that counsel against such an extension. Thus, there are no grounds on which to bar Plaintiff's claims from proceeding under *Bivens*.

#### A.   **The *Bivens* Inquiry**

When considering whether to permit a *Bivens* claim, courts engage in a two-step inquiry. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020); *see generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, (1971). First, the court queries whether the claim arises from a "new context" that is "different in a meaningful way" from the contexts of previous *Bivens* cases. *Mesa*, 140 S. Ct. at 743. (internal quotation omitted). If the case does not

4

present a new *Bivens* context, then the court may evaluate the claim for damages on the merits. If it is determined that the claim presents a new context, the court asks whether there are any "special factors that counsel hesitation about granting the extension." *Id.* (internal quotation omitted). Thus, it is only proper to reject a *Bivens* claim if it arises from a new context *and* there are special factors that counsel hesitation about an extension.

Under the first step of the *Bivens* inquiry, the court asks whether the claims arise from a context that is meaningfully different from previous cases where the *Bivens* remedy was extended. *Id.* Because no two cases are identical, it is crucial that the difference be "meaningful." In *Abbasi*, the Court provided numerous examples of how a case *might* differ in a "meaningful way," including:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). Ultimately, the Court concluded that the context of the claims in *Abbasi*—attempting to extend *Bivens* to high-level executive branch officials responsible for creating immigration policies in the wake of the September 11th terrorist attacks— was meaningfully different from the "standard law enforcement operations" that fall within the heartland of *Bivens* itself. *Id.* at 1861. Notably, the Court cabined its finding by emphasizing that:

> it must be understood that this opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose…. The settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere.

*Id.* at 1856–57.

As the Sixth Circuit has explained, *Abbasi* "is not about restricting the core of *Bivens*" but rather the continuation of the Court's "trend of cautioning against expanding its outer reaches." *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019) (holding that the plaintiff's claims of excessive force, false arrest, malicious prosecution, fabrication of evidence, and civil conspiracy were "run-of-the-mill challenges to 'standard law enforcement operations' that fall well within *Bivens* itself" (quoting *Abbasi*, 137 S. Ct. at 1861)). Although the Second Circuit has yet to decide an analogous case, the Sixth Circuit's conclusion and reasoning have been adopted by courts in this district. *Gonzalez v. Hasty*, 755 F. App'x 67, 69 (2d Cir. 2018) (declining to decide whether *Abbasi* abrogates any of the Circuit's *Bivens* precedent); *see e.g.*, *Bueno Diaz v. Mercurio*, 19 Civ. 1319 (AT), 2020 U.S. Dist. LEXIS 38868, at *10 (S.D.N.Y. Mar. 5, 2020) (citing and adopting the reasoning of the Sixth Circuit).

**B.**    **Plaintiff's Claims Do Not Present A New Context Under *Bivens***

Here, the Court should find that each of Plaintiff's claims do not present a new context under *Bivens*.

**1.**    **Plaintiff's false arrest claim does not present a new *Bivens* context**

False arrest claims lie at the very core of *Bivens*. They are part of the "settled law of *Bivens*" in the "search-and-seizure context" that the *Abbasi* Court described as a "necessity." *Abbasi*, 137 S. Ct., at 1856-57. False arrest claims are brought so regularly under *Bivens* that the Second Circuit characterizes them as a "familiar *Bivens* context." *Turkmen v. Hasty*, 789 F.3d 218, 275 (2d Cir. 2015).

*Bivens* squarely addressed the context of arrests unsupported by probable cause. *Bivens*, 403 U.S., at 389. Here, Plaintiff's false arrest claim under *Bivens* is unremarkable. Plaintiff simply alleges that Detective Santos caused him to be arrested at his home for drug possession and related

charges, despite the fact that Detective Santos knew no probable cause existed for such arrest. Compl. ¶ 140. Detective Santos does not dispute that Plaintiff's arrest was unsupported by probable cause. And the similarities between Plaintiff's claims and *Bivens* do not stop there.

As in *Bivens*, the case before this Court is a run-of-the-mill challenge to standard law enforcement operation. Both *Bivens* and this case deal with narcotics officers acting under federal law. Compl. ¶ 18; *Bivens*, 403 U.S., at 389. The purported legal mandate in both cases is also the same—an arrest of someone for an alleged narcotics offense. Compl. ¶ 3; *Bivens*, 403 U.S., at 389; *see also Bueno Diaz*, 2020 U.S. Dist. LEXIS 38868 at \*10; *Lehal v. Cent. Falls Det. Facility Corp.*, 13 Civ. 3923 (DF), U.S. Dist. LEXIS 49477, at \*31-34 (S.D.N.Y. Mar. 15, 2019). Moreover, the judicial guidance implicated in *Bivens* and the present case could not be clearer. Since time immemorial, it has been understood that a law enforcement officer must have probable cause to make an arrest. *Dunaway v. New York*, 442 U.S. 200 (1979).

Detective Santos does not argue that any of the potential indicators of a meaningful difference suggested by the *Abbasi* Court are present in Plaintiff's case. Indeed, the only difference between *Bivens* and Plaintiff's case argued by Detective Santos is that federal agents arrested Bivens after a warrantless search, whereas in Plaintiff's case the warrantless search was proceeded by a lawful search of the bottom two floors of Plaintiff's building. Def. Br. at 7. The fact that a warrantless search may have been proceeded by a lawful search is not a meaningful difference between Plaintiff's false arrest claim and the false arrest claim in *Bivens*. What is meaningful is that, just as was the case in *Bivens*, law enforcement officers (including Detective Santos) arrested Plaintiff without probable cause. Also central to *Bivens* was the privacy concerns implicated by the federal officers' warrantless seizure of the plaintiff in his home. So too here. Thus, the Court

should find that the facts underlying Plaintiff's false arrest claim are not meaningfully different from *Bivens*.

In addition to failing to point out any meaningful factual differences between Plaintiff's case and *Bivens*, Detective Santos fails to provide any meaningful legal argument distinguishing the false arrest claims in Plaintiff's case and *Bivens*. *See* Def. Br. at 7. Instead, Detective Santos cursorily cites two cases where sister courts found that false arrest *Bivens* claims presented "new contexts." *Id.* Both of those cases contain singular facts and are inapposite to Plaintiff's case.

In the first case cited by Detective Santos, *Oliveras*, the court determined that the context of the plaintiff's claims was meaningfully different from *Bivens* because the plaintiff was "the unwitting victim of collateral damage" that resulted from the execution of a valid arrest warrant against another party. *Oliveras v. Basile*, 16 Civ. 9619 (KPF), 2020 U.S. Dist. LEXIS 32014, at *13 (S.D.N.Y. Feb. 25, 2020). As a result, the court concluded that it was "unlikely that Plaintiff has actually alleged a violation of the Fourth Amendment" because "violation of the Fourth Amendment requires an intentional acquisition of physical control.... [T]he detention or taking itself must be willful." *Id.* at *21 (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989)). In stark contrast, it is undisputed that the detention of Plaintiff, like the plaintiff in *Bivens*, was willful, and his claim—that he was, *inter alia*, arrested without probable cause—is a well-established violation of the Fourth Amendment. Compl. ¶¶ 138-42; *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

In the second case cited by Detective Santos, *Martinez*, the court found *Martinez's* claims meaningfully different from *Bivens*. Unlike the plaintiff in *Bivens*, Martinez's arrest was made pursuant to an arrest warrant and, therefore, presumably based on probable cause. *Martinez v. D'Agata*, 16 Civ. 44 (VB), 2019 U.S. Dist. LEXIS 218107, at *17-18 (S.D.N.Y. Dec. 18, 2019).

Martinez was also arrested outside of his home while the plaintiff in *Bivens* was arrested inside his home, where privacy interests are heightened. *Id.* Finally, the right at issue in *Martinez* was freedom from excessive force whereas in *Bivens* it is predominantly the Fourth Amendment's right to privacy from unreasonable searches and seizures. *Id.* Along each of these dimensions, Plaintiff's claims mirror *Bivens*, not *Martinez*. Plaintiff's arrest was warrantless and unsupported by probable cause. Compl. ¶¶ 55-58, 140. Plaintiff was arrested in his home, and the right he asserts is the same privacy right to be free from unreasonable seizures that is the core of *Bivens*. *Id.* ¶ 140. Thus, *Martinez* actually supports upholding Plaintiff's false arrest *Bivens* claim.

### 2.    Plaintiff's malicious prosecution claim does not present a New *Bivens* context

Detective Santos' attempt to distinguish Plaintiff's malicious prosecution claim as an extension of *Bivens* is without merit. Specifically, Detective Santos cites *Butler v. Hesch*, 16 Civ. 1540 (MAD)(CFH), 2020 U.S. Dist. LEXIS 49437, at *34 (N.D.N.Y. Mar. 23, 2020) and *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019) as supporting the proposition that malicious prosecution claims categorically arise from contexts that meaningfully differ from *Bivens*. Def. Br. at 8. But neither case is apposite because they both fail to recognize that Second Circuit precedent recognizes *Bivens* actions for malicious prosecution. *See, e.g., Barone v. United States*, 722 F. App'x 57, 60-61 (2d Cir. 2018) (discussing merits of *Bivens* action for malicious prosecution); *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000) (adopting New York presumption of probable cause as federal standard in malicious prosecution *Bivens* actions).

Moreover, the *Butler* court specifically stated that its ruling did not conflict with the Sixth Circuit's *Jacobs* decision upholding a *Bivens* malicious prosecution claim because, unlike *Butler*, the factual scenario in *Jacobs* was "squarely aligned with the factual scenario presented by Bivens itself." *Butler*, 2020 U.S. Dist. LEXIS 49437, at *37. As discussed *supra* at Point I(B)(1), the

factual scenario in Plaintiff's case, involving, *inter* alia, Plaintiff's arrest in his home without probable cause, is also squarely aligned with the factual scenario presented by Bivens. Accordingly, this Court should find that Plaintiff's claim for malicious prosecution under *Bivens* should proceed.

>    **3.   Plaintiff's deprivation of liberty without due process of law and denial of a fair trial by fabricating evidence and withholding material exculpatory and impeachment evidence claim does not present a new *Bivens* context**

The Second Circuit has long recognized the viability of *Bivens* claims for fabrication of evidence. *Zahrey v. Coffey*, 221 F.3d 342, 344 (2d Cir. 2000) ("hold[ing] that there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty"); *id.* at 355, 357 (recognizing claims of fabricating evidence as viable *Bivens* actions).

While *Zahrey* was decided prior to the Court's decision in *Abbasi*, nothing in *Abbasi* purports to abrogate *Zahrey*. To the contrary, *Abbasi* instructed that "the opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose…. The settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere." *Abbasi*, 137 S. Ct., at 1856–57. When confronted with a *Bivens* claim for fabrication of evidence post-*Abbasi*, the Second Circuit assumed, without deciding, the availability for the *Bivens* due process claim and dismissed the claim for failure to plead sufficient facts to support that claim. *Ganek v. Leibowitz*, 874 F.3d 73, 90-91 (2d Cir. 2017). Confronted with the same situation, the Sixth Circuit held fabrication of evidence claim under *Bivens* were a "run-of-the-mill challenge[] to 'standard law enforcement operations' that fall[s] well

within *Bivens* itself." *Jacobs v. Alam*, 915 F.3d 1028, 1037-39 (6th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1861). Accordingly, this Court should find that Plaintiff's *Bivens* claim for fabrication of evidence does not constitute a new *Bivens* context.

4.   **Plaintiff's failure to intercede claim does not present a new *Bivens* context**

It is well-settled that law enforcement officers have "an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). The failure to intercede has consistently been recognized as a cognizable *Bivens* claim. *Cuoco v. Moritsugu*, 222 F.3d 99, 105, 111 (2d Cir. 2000) (holding that plaintiff's failure to intercede *Bivens* claim should have survived defendant's motion to dismiss); *see e.g.*, *Mejia v. City of New York*, 119 F. Supp. 2d 232, 280 (E.D.N.Y. 2000) (finding that defendant's failure to intercede to prevent plaintiff's arrest is a cognizable *Bivens* claim); *Castellar v. Caporale*, 04 Civ. 3402 (DGT), 2010 U.S. Dist. LEXIS 91191, at *15 (E.D.N.Y. Sept. 2, 2010) (discussing failure to intercede as a viable *Bivens* claim); *Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (same).

As discussed above, the Court's subsequent decision in *Abbasi* does not abrogate these decisions. *Abbasi*, 137 S. Ct., at 1856–57. Plaintiff plausibly alleges a failure to intercede claim predicated on Detective Santos' failure to prevent the violation of his Fourth Amendment rights against unreasonable searches and seizures. Compl. ¶¶ 156-58. Thus, his claim is exactly part of the "settled law" that *Abbasi* disavowed any displacement of. *Abbasi*, 137 S. Ct., at 1856–57.

Attempting to dislodge Plaintiff's claim from this well-recognized *Bivens* context, Detective Santos argues that Plaintiff's failure to intercede claim is meaningfully different because it involved a "different legal mandate." Def. Br. at 9. She claims that the "legal mandate" at issue in *Bivens* is meaningfully different because the plaintiff in *Bivens* was arrested in his home, without

11

a warrant, and without probable cause. *Id.* However, these are precisely the same facts underlying Plaintiff's claims. Detective Santos' point that, antecedent to the warrantless search of the third floor and subsequent arrest of Plaintiff, Defendants conducted another purportedly lawful search pursuant to a warrant is not relevant.

Detective Santos' erroneously relies on *Rivera v. Samilo* to further support her contention that *Bivens* involved a meaningfully different legal mandate. Def. Br. at 9 (citing *Rivera v. Samilo*, 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019). In *Rivera*, the court found that the plaintiff's arrest arose from a different legal mandate than *Bivens* because the arrest "was made upon probable cause after a valid vehicle search conducted with probable cause." *Rivera*, 370 F. Supp. 3d at 369. *Rivera* is inapposite because Plaintiff—like Bivens—was arrested without probable cause. Compl. ¶¶ 55-65, 158.

Detective Santos additionally argues that Plaintiff's failure to intercede claim converted into a "new context" because Detective Santos was an appointed member of the United States Drug Enforcement Administration ("DEA") federal task force, rather than a DEA agent as in *Bivens*. Def. Br. At 9. This is not a distinction, let alone a meaningful distinction. In any event, as a sister court has noted, "[i]t cannot be that the character of the law enforcement officer, without more, automatically converts a plaintiff's claim into a "new context," even post-*Abbasi*." *Prado v. Perez*, 18 Civ. 9806 (JPO), 2020 U.S. Dist. LEXIS 59220, at *16 (S.D.N.Y. Apr. 3, 2020). To hold otherwise, would be to grant any state law enforcement officer working with a federal task force immunity from both § 1983 and *Bivens* actions.

###     5.     Plaintiff's civil rights conspiracy claim does not present a new *Bivens* context

Detective Santos argues that Plaintiff's claim for civil conspiracy fails because all of his underlying claims present new *Bivens* contexts. Def. Br. at 9. If any of these claims are viable then

the civil conspiracy claim is also viable. As argued above, all of Plaintiff's claims arise from contexts well-recognized by *Bivens* so Plaintiff's conspiracy claim is also viable. Detective Santos concedes as much. *Id.* (failing to provide a single fact that would support a finding that Plaintiff's civil conspiracy claims arise from a new *Bivens* context). Indeed, she cannot, because Plaintiff's claim that Detective Santos conspired to violate his right to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, deprivation of liberty without due process of law, and to a fair trial are each "run-of-the-mill challenge[s] to 'standard law enforcement operations' that fall well within *Bivens* itself." *Jacobs v. Alam*, 915 F.3d 1028, 1037-39 (6th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1861); *see also Fiorito v. Anderson*, 18 Civ. 506 (JFW)(KES), 2019 U.S. Dist. LEXIS, at *1 (C.D. Cal. Apr. 15, 2019) (allowing *Bivens* civil conspiracy claim to proceed); *Helvig v. United States*, 18 Civ. 7939 (PSG), 2019 U.S. Dist. LEXIS 228444, at *21-22 (C.D. Cal. Oct. 1, 2019) (adopting the reasoning of Sixth Circuit in *Jacobs* which concluded that plaintiff's *Bivens* civil conspiracy claim was viable under *Abbasi*).

**C      Even If Plaintiff's Claims Arise from a New Context, There Are Not Any Special Factors That Caution Against Extending *Bivens***

Because all of Plaintiff's claims arise from well-established *Bivens* contexts, they are viable and should not be dismissed. But, even if this Court finds that Plaintiff's claims arise from new contexts, they are still viable under *Bivens*. As the *Hernandez* Court has explained, the *Bivens* remedy is only unavailable when a claim arises from a new context *and* there are "special factors that counsel hesitation about granting the extension." *Hernandez*, 140 S. Ct., at 743 (internal quotation omitted); *Abbasi*, 137 S. Ct., at 1859–60 (describing the two-step *Bivens* test). There are no such special factors present here.

Detective Santos contends that there are three special factors that counsel hesitation about granting an extension: (1) the potential for relief through the Federal Tort Claims Act (FTCA); (2)

the risk of interfering with the state's investigative and prosecutorial functions; and (3) the lapse

of time during which Congress has not explicitly created a *Bivens* remedy for the claims brought

by Plaintiff. Def. Br. at 10-12. Detective Santos's contentions fall flat.

Over forty years ago, the Court held that the availability of a claim under the FTCA does

not preempt a *Bivens* remedy because it is "crystal clear that Congress views FTCA and Bivens as

parallel, complementary causes of action." *Carlson v. Green*, 446 U.S. 14, 19-20 (1980).

Reaffirming *Carlson* some twenty years later, the Court stated that:

> We reasoned that the threat of suit against the United States was
> insufficient to deter the unconstitutional acts of individuals. Because
> the *Bivens* remedy is recoverable against individuals, it is a more
> effective deterrent than the FTCA remedy. We also found it 'crystal
> clear' that Congress intended the FTCA and *Bivens* to serve as
> 'parallel' and 'complementary' sources of liability.

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (citing *Carlson*, 446 U.S. 14) (internal

quotation omitted). And *Abbasi* did not overrule *Carlson*. Conversely, *Abbasi* instructed that it

was "not intended to cast doubt on … the settled law of *Bivens* in … the common and recurrent

sphere of law enforcement." *Abbasi*, 137 S. Ct., at 1856-57.

In an attempt to circumvent *Carlson*, Detective Santos cites *Abbasi*'s statement that the

"existence of alternative remedies usually precludes a court from authorizing a *Bivens* action."

Def. Br. at 10 (internal quotation omitted). Detective Santos fails to recognize that *Abbasi* was

discussing alternative remedies in the context of a claim brought against high-level executive

branch officials for the creation of immigration policies in the wake of the September 11th terrorist

attacks. *Abbasi*, 137 S. Ct., at 1848-49. Specifically, the Court cited a writ of habeas corpus and

an injunction requiring the warden to bring his prison into compliance with regulatory standards

as the potential alternative remedies weighing against extension of *Bivens*. *Id.* at 1865. Neither of

these remedies are relevant to Plaintiff's claims. Moreover, the Court noted that "it is true that, if

equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations" and "individual instances of … law enforcement overreach" are by "their very nature … difficult to address except by way of damages after the fact." *Id.* at 1858, 1862 (distinguishing prior cases challenging individual instances of law enforcement overreach from respondents' challenge of large-scale policy decisions). As a sister court explained:

> Bivens and FTCA actions vindicate different wrongs. Bivens remedies vindicate violations of constitutional rights by federal employees, whereas the FTCA permits… damages for intentional torts inflicted by federal law enforcement officers. The FTCA remains, therefore, an insufficient protector of the citizens' constitutional rights, and its availability does not alone compel a conclusion that a remedy under Bivens is precluded.

*Bueno Diaz*, 2020 U.S. Dist. LEXIS at *16 (internal quotation omitted).

*Abbasi* did not abrogate *Carlson*. If the *Abbasi* Court wanted to abrogate *Carlson* they would have done so clearly. It would make little sense for the Court to abrogate *Carlson* implicitly given their clear instructions that *Abbasi* was "not intended to cast doubt on … the settled law of *Bivens*" of which *Carlson* is certainly part of. *Abbasi*, 137 S. Ct., at 1856-57. The Court has emphatically rejected the notion of abrogation by implication, stating that "if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). Thus, this court should not consider the potential of an alternative remedy under the FTCA as a special factor counseling against extension of *Bivens*.

As to Detective Santos's second "special factor"—the risk of interference with the state's investigative and prosecutorial functions—it is important to note that this "risk" is only raised with respect to Plaintiff's malicious prosecution claim. Def. Br. at 11. This purported "risk" is meritless

because the Second Circuit already considers damages remedies for malicious prosecution *Bivens* actions. *See, e.g., Barone*, 722 F. App'x at 60-61 (considering merits of malicious prosecution *Bivens* claim post-*Abbasi*); *Green*, 219 F.3d at 60 (adopting New York presumption of probable cause as federal standard in malicious prosecution *Bivens* actions). "Because this case treads the same ground as *Bivens*, the recognition of a damages remedy would not, as the Supreme Court cautioned, be akin to "establish[ing] [a] whole [new] category[y] of cases in which federal officers must defend against personal liability claims," a move more appropriate for action by Congress *Bueno Diaz*, 2020 U.S. Dist. LEXIS 38868, at *19-20 (quoting *Abbasi*, 137 S. Ct. at 1858). Plaintiff's malicious prosecution claim does not threaten expansion of liability to a new class of actors or category of cases.

Finally, Detective Santos contends that the lapse of time without Congress legislating a *Bivens* type remedy for these claims cuts against extending *Bivens* here. Def. Br. at 11-12. This argument also fails. As discussed above, all of the claims Plaintiff advances have previously been found by courts to be viable *Bivens* claims. *See e.g., Jacobs*, 915 F.3d at 1037 (holding that the plaintiff's claims of excessive force, false arrest, malicious prosecution, fabrication of evidence, and civil conspiracy were "run-of-the-mill challenges to 'standard law enforcement operations' that fall well within *Bivens* itself" (quoting *Abbasi*, 137 S. Ct. at 1861)); *Cuoco*, 222 F.3d at 105, 111 (holding that plaintiff's failure to intercede *Bivens* claim should have survived defendant's motion to dismiss); *Zahrey*, 221 F.3d at 344 ("hold[ing] that there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty.").

There is little need for Congress to legislatively create a remedy that has already been judicially constructed. Regardless, the Court has repeatedly found that "Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction…." *United States v. Craft*, 535 U.S. 274, 287 (2002) (internal quotation omitted); *see also Alexander v. Sandoval*, 532 U.S. 275, 292 (2001) (internal quotation omitted); *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1015 (2017). Therefore, Congressional inaction is not a special factor weighing against extending *Bivens*—should this court even reach this question.

## II.   PLAINTIFF'S CLAIMS ARE SUFFICIENTLY PLED

Plaintiff's sufficiently alleges Detective Santos' personal involvement in the violation of his constitutional rights and facts sufficient to state claims against her for malicious prosecution, failure to intercede, and civil conspiracy.[1]

### A.   The Complaint Alleges Personal Involvement of Detective Santos

Detective Santos argues that Mr. Powell has not alleged her personal involvement. Def. Br. at 12-14. Her argument is without merit.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement may be established by evidence that "the defendant participated directly in the alleged constitutional violation." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). "[D]irect participation" means "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). "Indirect conduct" such as ordering or helping others to do the unlawful acts, rather than doing them [oneself], can also constitute

---

[1] These are the only claims Defendant challenges. Def. Br. at 12-19.

"direct participation." *Id.* Where issues of personal involvement are unresolved when a motion to dismiss is made, the Second Circuit has held that "dismissal is premature" and that "the opportunity to identify those involved [should be] accorded." *Davis v. Kelly*, 160 F.3d 917, 921-22 (2d Cir. 1998).

Here, the complaint alleges that Detective Santos and other law enforcement officers, after failing to find any criminal contraband in either Plaintiff's apartment or the apartment above Plaintiff, deliberately went outside the boundaries of the search warrant they were executing to illegally search the third-floor apartment where drugs were found. Compl. ¶¶ 39-61. Recognizing the unlawfulness of their actions, Detective Santos and the other law enforcement officers agreed amongst themselves to falsely claim that the drugs they recovered from the third-floor apartment had been found in Plaintiff's custody and control on the first and second floors. *Id.* ¶ 65. Detective Santos knew that the drugs recovered from the third-floor apartment were not in Plaintiff's custody or control and that this evidence did not implicate Plaintiff in any wrongdoing. *Id.* ¶ 64. Nonetheless, Detective Santos participated in preparing false and misleading paperwork that was forwarded to an Assistant District Attorney ("ADA") at the Office of the Special Narcotics Prosecutor to incriminate Plaintiff. *Id.* ¶¶ 69-70. Detective Santos swore to an Affidavit of Inventory of Property Taken Under Search Warrant in which she falsely stated Property Clerk's Invoices that falsely represented that criminal contraband had been recovered from the first and second floors of Plaintiff's apartment building and was owned by Plaintiff. *Id.* ¶¶ 71-78. Detective Santos knew the contraband was not owned by Plaintiff because she had seized the evidence in a locked closet in the third-floor apartment. *Id.* Detective Santos knew her affidavit containing false information would be presented to an ADA and used to prosecute Plaintiff. *Id.* ¶ 78.   These

specific, detailed allegations far exceed the "threadbare recitals" and "unadorned, the-defendant-unlawfully-harmed-me-accusation" denounced in *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Detective Santos' argument that the Complaint fails to provide notice of what she is alleged to have done because of "group pleading" is equally meritless. This case is not like *Atuahene* in which a *pro se* plaintiff alleged a litany of constitutional violations against numerous defendants without identifying any factual basis for those claims. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). This case is also unlike *Sanusi* where the plaintiff's vague allegation that supervisory defendants were "aware and responsible for the deplorable condition of his detention" was found insufficient to sustain an alleged continuing violation. *Sanusi v. Dep't of Homeland Sec.*, 06 Civ. 2929 (SJ)(JMA), 2014 U.S. Dist. LEXIS 44030, at *12-16 (E.D.N.Y. Mar. 31, 2014). Here, Plaintiff alleges that several detectives, including Detective Santos, unlawfully caused Plaintiff's arrest and prosecution by falsely claiming that evidence that they had unlawfully seized outside of Plaintiff's custody and control, and having no connection to Plaintiff, was owned by Plaintiff and recovered in his apartment. It is natural that allegations against these detectives for this jointly conducted misconduct would be similar, if not identical. *See Sarikaputar v. Veratip Corp.*, 17 Civ. 814 (ALC), 2019 U.S. Dist. LEXIS 92436, at *5-6 (S.D.N.Y. Jun. 3, 2019).

Accordingly, the Court should find that Mr. Powell's allegations sufficiently give Detective Santos fair notice of the claims against her and the grounds upon which they rest.

B.     **The Complaint States A Claim for Malicious Prosecution**

To state a claim of malicious prosecution, a plaintiff must "demonstrate (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir.

2016) (internal quotation omitted). Detective Santos contends that Plaintiff's complaint fails on the first, second, and fourth prongs. Def. Br. at 14-17. Detective Santos is wrong.

### 1.   Detective Santos participated in initiating the Plaintiff's prosecution

Detective Santos argues that Plaintiff fails to satisfy the first prong of a malicious prosecution claim because "Plaintiff cannot plausibly allege that Detective Santos played any active role in the initiation or continuation of Plaintiff's prosecution." Def. Br. at 14. According to her, this prong is only satisfied if the law enforcement signs a charging document, like a criminal court complaint, which she did not do in this case. *Id.* This argument fails because it takes an unduly narrow view of the type of conduct that can constitute an initiation and continuation of a prosecution.

"A police officer initiates criminal proceedings for purposes of a malicious prosecution claim by having the plaintiff arraigned, filling out complaining or corroborating affidavits, or signing a felony complaint." *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 162 (E.D.N.Y. 2016) (citing *See Llerando–Phipps v. City of New York*, 390 F. Supp. 2d 372, 382–83 (S.D.N.Y. 2005)). A law enforcement officer may also be held liable for malicious prosecution if she "creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Cameron v. City of N.Y.*, 598 F.3d 50, 64 (2d Cir. 2010) (internal quotations omitted).

Here, Plaintiff alleges that Detective Santos created an affidavit containing false information to corroborate the lie that criminal drug evidence had been found in Plaintiff's possession. Compl. ¶ 75. Detective Santos knew her corroborating affidavit contained false information because she had seized the drug evidence in a locked closet in someone else's apartment. *Id.* 77. Detective Santos forwarded her untrue affidavit to prosecutors knowing that it would be used as evidence to prosecute Plaintiff. *Id.* ¶¶ 70, 74, 78. And the false information

Detective Santos provided to prosecutors contributed to the decision to prosecute Plaintiff. *Id.* ¶82. The likelihood of Detective Santos' false information to influence a jury is easily inferred from the fact that the prosecution agreed to dismiss the case against Plaintiff once it was determined that her information was false. *Id.* ¶¶ 109, 111.

The Court should, therefore, find that Plaintiff has sufficiently alleged facts establishing that Detective Santos participated in in commencing the false criminal proceeding against Plaintiff.

### 2.    The termination of Plaintiff's prosecution was favorable

With respect to the second prong, Detective Santos argues that the dismissal of criminal charges against Plaintiff did not "affirmatively indicate his innocence." Def. Br. At 15 (citing *Lanning v. City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018). This argument misconstrues *Lanning* and the Complaint.

The Second Circuit in *Lanning* "reaffirmed the longtime requirement that favorable termination under federal law requires that 'the prosecution terminated in some manner indicating that the person was not guilty of the offense charged,' based on the 'merits' rather than 'on any number of procedural or jurisdictional grounds.'" *Rosario v. City of New York*, 18 Civ. 4023 (LGS), 2019 U.S. Dist. LEXIS 159771, at *11 (S.D.N.Y. Sept. 16, 2019) (citing *Lanning*, 908 F.3d at 29). "No single type of disposition is necessary or sufficient, but the termination must be 'measured in objective terms by examining the totality of the circumstances.'" *Id.* Accordingly, Detective Santos' contention that termination of a prosecution on suppression grounds cannot support a subsequent claim for malicious prosecution is entirely erroneous.

The proper issue in determining favorable termination for a dismissal based on the suppression of evidence is whether the circumstances surrounding the suppression and subsequent dismissal provide affirmative indications of innocence. *Blount v. City of New York*, 15 Civ. 5599

21

(PKC)(JO), 2019 U.S. Dist. LEXIS 34969, at *10-11 (E.D.N.Y. Mar. 5, 2019) (citing *Miller v Cuccia*, 99-7088(L), 99-7122 (XAP), 1999 U.S. App. LEXIS 30445 (2d Cir. Nov. 18, 1999); *see Smalls v. Collins,* 14 Civ. 2326 (CBA)(RML), 2020 U.S. Dist. LEXIS 52213, at *24-25 (E.D.N.Y. Mar. 16, 2020). For example, in *Gonzalez*, although criminal charges against plaintiff were dismissed after drug evidence was found to have been illegally seized, the Second Circuit found the undisputed fact that "officers found crack cocaine in [plaintiff's] rectum, eliminat[ed] any doubt that [plaintiff] was, in fact, guilty of at least criminal possession of a controlled substance." *Id.* In *Smalls,* a dismissal premised on suppression of a gun was similarly held to not constitute a favorable termination because it was undisputed that the plaintiff criminally possessed a gun. *Smalls,* 2020 U.S. Dist. LEXIS 52213 at *24-25.

In contrast to *Gonzalez* and *Smalls*, the court in *Blount* found a favorable termination after plaintiff's arrest for weapons possession was reversed based on the failure to suppress improperly obtained evidence. *Blount*, 2019 U.S. Dist. LEXIS 34969 at *10-11. The court reached its determination after looking into the nature of the suppression to determine whether the particular facts indicated the plaintiff's innocence. *Id.* In doing so, the court found that the sole witness at the suppression hearing, the arresting detective, lacked credibility, and that the criminal case record was "completely devoid of any information or evidence tending to support, even by reasonable inference," that the detective's purported observation that the defendant engaged in criminal activity. *Id.* (citations omitted). The district court concluded that, "[b]ased on the reasons given by the state court in its suppression order, coupled with the fact that Plaintiff has maintained his innocence of all charges throughout the prosecution and subsequent civil proceedings, the Court finds that affirmative indications of innocence exist surrounding the dismissal of the prosecution stemming from Plaintiff's . . . arrest." *Id.* at *11. Based on these circumstances, the court held

dismissal of the prosecution after the suppression of evidence affirmatively indicated the plaintiff's innocence and ruled that the termination was favorable. *Id.*

Here, the Court should find that, similar to *Blount*, the nature of the suppression of evidence against Plaintiff indicates his innocence. The allegation that drug evidence was found in Plaintiff's possession was found to be entirely untrue.[2] Without this evidence, there is no information or evidence tending to support, even by reasonable inference, that Plaintiff was guilty of any crime. Additionally, Plaintiff has always maintained his innocence against defendants' allegations. Comp. ¶ 126. Accordingly, this Court should find that indications of innocence exist surrounding the dismissal of Plaintiff's prosecution and that the prosecution was terminated in Plaintiff's favor.

### 3.  Detective Santos initiated Plaintiff's prosecution with malice

Lastly, Detective Santos argues that the Plaintiff's prosecution was not instituted with malice. Def. Br. at 16-17. This argument fails on its own terms. In *Manganiello*, a case cited by Defendant, the court ruled that: "First, "[a] lack of probable cause generally creates an inference of malice.... Further, malice may be shown by proving that the prosecution complained of was undertaken ... in reckless disregard of the rights of the plaintiff." *Manganiello v. City of New York*, 612 F.3d 149, 163–64 (2d Cir. 2010) (internal quotation omitted) (upholding a jury verdict that found a New York City detective liable for maliciously prosecuting the plaintiff). As Mr. Powell alleges, there was no probable cause for his arrest, and Defendant's actions and inactions

---

[2] This Court may take judicial notice that one of the officers who participated in Plaintiff's arrest, Detective Fogarty, pleaded guilty to misdemeanor perjury for lying about where drug evidence was recovered (*see* Jonathan Bandler, *Yonkers Detective Sean Fogarty pleads guilty to perjury for lying in drug case*, Rockland/Westchester Journal News, available at: https://www.lohud.com/story/news/crime/2019/12/27/yonkers-detective-sean-fogarty-pleads-guilty-perjury-case/2753367001/ (last visited June 19, 2020)). *Hutchins v. Solomon*, 16 Civ. 10029 (KMK), 2018 U.S. Dist. LEXIS 169421, at *23 f. 4 (S.D.N.Y. Sept. 29, 2018) (taking judicial notice of newspaper article for limited purposes). Plaintiff does not expect Detective Santos will dispute that Defendant Detective Sean Fogarty pled guilty to misdemeanor perjury in connection with his conduct in Plaintiff's underlying criminal case.

demonstrated reckless disregard of his rights. Compl. ¶¶ 119, 144-46, 157-58. Thus, Plaintiff's complaint sufficiently states a claim for malicious prosecution.

**C.     The Complaint Sufficiently States A Claim for Failure to Intercede**

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994). Liability may attach where an officer fails to intervene but observes or has reason to know that a constitutional violation has been committed by a law enforcement official. *Id.* For an officer to be held liable for failing to intervene, she must have had a realistic opportunity to intervene and prevent the violation at issue from happening. *Id.* (citation omitted). Additionally, "there can be no failure to intervene claim without a primary constitutional violation." *Forney v. Forney,* 96 F. Supp.3d 7, 13 (E.D.N.Y. 2015).

Detective Santos argues that Plaintiff's failure to intervene claim is conclusory and should, therefore, be dismissed. In support of her argument, Detective Santos cites *Jackson v. Seeward* in which a failure to intercede claim was found fatally deficient for failing to allege that defendants had the opportunity to prevent the plaintiff's arrest but failed to do so. *Jackson v. Seeward*, 11 Civ. 7733 (JCF), 2013 U.S. Dist. LEXIS 7733, at *37 (S.D.N.Y. Jan. 14, 2013). Unlike that case, Plaintiff, here, alleges that Detective Santos had the opportunity to intercede on behalf of Plaintiff to prevent his false arrest and other constitutional violations (which she had knowledge of and was present for) but failed to do so. Compl. ¶¶ 75, 77, 82, 156-60. Under *Anderson*, Plaintiff's allegations sufficiently state a claim for failure to intercede.

Detective Santos additionally argues that Plaintiff's failure to intervene claim fails because Plaintiff alleges that she participated in unconstitutional conduct, "but also conclusorily alleges that she and other defendants 'had  opportunities to intercede on behalf of [Plaintiff] to prevent

[the violation of his constitutional rights]' but failed to do so." Def. Br. at 17. Detective Santos'

argument is meritless. Alleging that a constitutional violation occurred in the presence of several

officers is sufficient to maintain a failure to intervene claim. *See Sanabria v. Tezlof*, No. 11 Civ.

6578 (NSR), 2016 U.S. Dist. LEXIS 107104, at *18 (S.D.N.Y. Aug. 12, 2016). Allegations that

multiple officers both participated in a constitutional violation and failed to intervene is

immaterial. *Id.* The determination of who specifically participated in the constitutional violation,

and, hence, is not liable for failure to intervene, will be determined in discovery. *Id.* Plaintiff's

failure to intervene claim must stand.

### D.      The Complaint Sufficiently States a Claim for Conspiracy

The elements of a § 1983 (and *Bivens*) conspiracy are: "(1) an agreement between two or

more state actors or between a state actor and a private entity; (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Although conclusory allegations of a

conspiracy are insufficient, the Second Circuit has found that "conspiracies are by their very nature

secretive operations, and may have to be proven by circumstantial, rather than direct, evidence."

*Id.* at 72 (internal quotation omitted). At the motion to dismiss stage, the complaint need only

allege a "plausible suggestion of conspiracy." *Iqbal*, 556 U.S. at 680 (internal quotation omitted).

Here, Mr. Powell sufficiently alleges a "plausible suggestion of conspiracy." Mr. Powell

alleges that Defendant entered an agreement with other state actors to lie about the location where

they recovered drugs and other evidence from. Compl. ¶ 65. This is a far cry from a conclusory

allegation. The second element is easily met, as the agreement to fabricate evidence was a naked

unconstitutional injury. *Id.* ¶¶ 149-53, 156-58. Finally, Mr. Powell lists several overt acts done in

furtherance of the goal of violating his constitutional rights. *Id.* ¶ 163. Therefore, the Court should find that Mr. Powell's complaint sufficiently states a claim of conspiracy.

## III.    DETECTIVE SANTOS IS NOT ENTITLED TO QUALIFIED IMMUNITY

At the 12(b)(6) stage, qualified immunity may only be granted if "the facts supporting the defense appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna v. Wright*, 386 F.3d 432, 435-36 (2d Cir. 2004)). It is the defendant's burden to establish that she is entitled to qualified immunity. *Gardner v. Murphy*, 613 F. App'x 40, 41 (2d Cir. 2015) (citing *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013)). And in raising a qualified immunity defense in a 12(b)(6) motion, the defendant must accept "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Hyman*, 630 F. App'x at 42 (quoting *McKenna*, 386 F.3d at 436).

In general, the doctrine of qualified immunity protects governmental officials from liability unless "the official violated a statutory or constitutional right" that "was clearly established at the time of the challenged conduct." *Sanchez v. Bonacchi*, 799 F. App'x 60, 61 (2d Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Doe v. Cappiello*, 758 F. App'x 181, 184 (2d Cir. 2019) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "Plaintiffs need not provide a case directly on point, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Penree by Penree v. City of Utica, New York*, 694 F. App'x 30, 32 (2d Cir. 2017) (quoting *al-Kidd*, 563 U.S. at 741). The qualified immunity inquiry is "an objective, not a

subjective, test." *Sanchez*, 799 F. App'x at 61 (quoting *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)).

Here, Defendant violated Mr. Powell's clearly established constitutional rights. No reasonable officer would have believed that Defendant's conduct was lawful. Mr. Powell's claims against Defendant are grounded in the violation of his Fourth Amendment right to be free from unreasonable search and seizure and Fifth Amendment right to due process and a fair trial. Compl. ¶¶ 138-64. Mr. Powell alleges that Defendant fabricated evidence, falsified information in the arrest report, signed an affidavit that she knew was false, and withheld exculpatory evidence to cause Mr. Powell's false arrest and malicious prosecution. *Id.* ¶¶ 62-70, 75-77. Such conduct is so far beyond the pale that no reasonable officer could have thought such action was lawful. *See Zahrey*, 221 F.3d at 344 (2d Cir. 2000) ("hold[ing] that there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty.").

To these points, Detective Santos' brief is unresponsive. Detective Santos claims that she was "entitled to rely on the search warrant signed by a judge" but this is not the conduct Plaintiff complains of. Detective Santos fails to acknowledge that the property clerk invoice she swore to the veracity of falsely claimed that Mr. Powell was the owner of the drugs and related items that she knew were actually seized from a third-floor apartment and not possessed by Plaintiff. Thus, because Mr. Powell alleges that Defendant blatantly violated his clear constitutional rights, qualified immunity should not be granted.

**CONCLUSION**

For the foregoing reasons, and based on the pleadings filed in this case, the Court should deny Detective Santos' motion to dismiss. Should the Court find any deficiencies in Plaintiff's opposition to this motion, Plaintiff respectfully requests the opportunity to amend his complaint. *See Romani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("when a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint") (internal quotation and citation omitted).

Dated:  New York, New York
        June 19, 2020

/s/Marc A. Cannan                      
Marc A. Cannan (MC 0513)
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, 26th Floor
New York, New York 10016
(212) 490-0400
mcannan@blhny.com

*Attorneys for Plaintiff Calvin Powell*