UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

CALVIN POWELL,

                            Plaintiff,

UNITED STATES OF AMERICA; United States
Drug Enforcement Agency ("DEA") Detectives
SEAN FOGARTY, JOHANNA SANTOS, and
"JOHN and/or JANE DOES" Nos. 1, 2, 3, etc., in
their individual capacities; THE CITY OF NEW
YORK, a municipal entity; NEW YORK CITY
POLICE DEPARTMENT ("NYPD") POLICE
OFFICERS JOHN DOHERTY, and "RICHARD
and/or RACHEL ROES Nos. 1, 2, 3, etc., in their
individual capacities; and Investigators and
Officials of The Office of the Special Narcotics
Prosecutor for the City of New York "STANLEY
and/or SALLY SOES" Nos. 1, 2, 3, etc., in their
individual capacities,

                            Defendants.

-------------------------------------------------------------- X

**OPINION & ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

19 Civ. 11351 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        In or around April 2018, law enforcement officials obtained a warrant to search the first and second floors of a three-story Bronx apartment building.  In this civil rights action, Plaintiff Calvin Powell claims that the officers executing the search warrant found no evidence of criminality on the first or second floors of the building, proceeded to *exceed* the scope of the warrant by searching the third floor, and, after finding several kilograms of cocaine on the third floor, falsely maintained that the drugs were found pursuant to the warrant, ultimately resulting in Powell's arrest, imprisonment, and prosecution.  The prosecution was later dropped, however, after Powell adduced photographs taken by officers at the scene revealing that the cocaine and other contraband were recovered from the third floor.[1]  Powell seeks to recover damages against

---

[1] News sources indicate that one of the officers involved in the search, Defendant Sean Fogarty, later pled guilty to a perjury charge in connection with his statement to a grand jury that the drugs and related evidence were found on the second floor of the apartment.  *See* Jonathan Bandler, Yonkers Detective Sean Fogarty Pleads Guilty to Perjury for

the officers involved in the search and prosecution, among other defendants, under the Federal

Tort Claim Act ("FTCA"), *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403

U.S. 388 (1971) ("*Bivens*"), 42 U.S.C. § 1983, and related New York state law theories.  Now

before me is a motion to dismiss by one of the individual officers:  Defendant Johanna Santos.

For the reasons that follow, the motion is granted in part and denied in part.

### Factual Background

I summarize the alleged facts and procedural history only to the extent necessary

to resolve the instant motion to dismiss.[2]

A. The Search

Powell owns a three-family, three-story apartment building (hereinafter, the

"Building") in the Bronx.  *See* Complaint ("Compl."), ECF No. 1, at ¶ 24.  For the last twenty

years, Powell has lived with his family on the first floor of the Building and has rented out the

second- and third-floor apartments to others for residential use.  *Id*. at ¶¶ 25-27.

On April 18, 2018, Defendant Detective Sean Fogarty obtained a warrant to

search the first and second floors of the Building.  *See id*. at ¶¶ 44-48.  The warrant was prepared

by Fogarty and supported by his affidavit.  *See id*.  The warrant and affidavit both alleged that

there was reasonable cause to believe that drugs were being sold out of both the first and second

floors of the Building.  *See id*. at ¶¶ 46, 49.  By contrast, the warrant specifically stated that law

---

Lying in Drug Case, Rockland/Westchester Journal News, https://www.lohud.com/story/news/crime/2019/12/27/yonkers-detective-sean-fogarty-pleads-guilty-perjury-case/2753367001/ (last visited July 6, 2020).  According to these sources, Fogarty was forced into early retirement as part of his plea deal.  *See id*.  Although Powell "does not expect Detective Santos will dispute that … Fogarty pled guilty to misdemeanor perjury," Pl. Opp. Mem., ECF No. 49, at 23 n.1, I take judicial notice only of the article's existence and not the truth of its description of the facts, *see*, *e.g.*, *In Re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 757 F.Supp.2d 260, 302 (S.D.N.Y. 2010), as it is immaterial for present purposes whether Fogarty indeed took such a plea.

[2] The facts are taken from the FAC and are assumed true for purposes of this motion.  *See*, *e.g.*, *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

enforcement had "no reason to believe" that any criminal activity was taking place on the third floor, and, as such, did not request access to that floor. *Id*.

Later in the day on April 18, Powell received a call from his probation officer, Sandra Osman. *Id*. at ¶ 30.[3] Osman informed Powell that two of her colleagues were waiting outside of his home in order to perform a "house visit," and asked Powell to meet them outside. *Id*. at ¶¶ 31-32. Complying, Powell exited his residence and was met at the sidewalk by two individuals. *Id*. at ¶ 34. After confirming Powell's identity, the two individuals stated that they were members of law enforcement and handcuffed Powell, arresting him. *Id*. at ¶¶ 34-35.

Meanwhile, Powell observed numerous law enforcement officers and vehicles arriving at the Building. *Id*. at ¶ 37. Several officers——including Fogarty and Defendants John Doherty and Johanna Santos, all of whom were members of the United States Drug Enforcement Agency's New York Drug Enforcement Taskforce——proceeded to enter Powell's first-floor apartment and search the premises. *Id*. at ¶¶ 38-39.

The officers executing the search did not find any contraband or evidence of illegal activity on the first floor. *Id*. at ¶ 50. Undeterred, the officers proceeded to the second-floor apartment, where they arrested the tenants of that unit and commenced a new search. *Id*. at ¶¶ 51-52. Once again, the officers' search of the second-floor apartment failed to turn up any evidence of criminality. *Id*. at ¶ 54.

Having found no incriminating evidence on the first or second floors and aware that the warrant confined its authorization to just those two floors, the officers present at the scene——including, *inter alia*, Fogarty and Santos——"deliberately went beyond the scope of the … warrant" and embarked on a new search of the third floor. *Id*. at ¶¶ 55-58. Upon breaking down the door to the third-floor apartment, the officers discovered papers and personal effects

---

[3] The Complaint does not specify why Powell was on probation.

that indicated that the unit was controlled and occupied by a tenant other than Powell.  The officers further discovered a large quantity of cocaine, crack cocaine, and drug paraphernalia such as plastic bags containing "cutting agents" and "digital scales."  *Id*. at ¶¶ 60-61.

B. Post-Arrest Representations

Following Powell's arrest, and fully cognizant of their having violated the terms of the warrant, the officers transported Powell to detention.  *See id*. at ¶¶ 65-67.  Powell alleges on "information and belief" that Fogarty and Santos, among others, "agreed to falsely claim that they had recovered the drugs and other criminal evidence … within the bounds of their warrant on the first and second floor apartments."  *Id*. at ¶ 65.

In the course of processing Powell's arrest, Fogarty and Santos, among others, "prepared false and misleading arrest paperwork," which was "forwarded to an Assistant District Attorney."  *Id*. at ¶¶ 69-70.  For instance, Doherty prepared an arrest report that falsely asserted that the officers executing the warrant had found Powell to be "in possession of a large quantity of a controlled substance," *id*. at ¶ 71, and similarly created invoices for the evidence recovered that falsely listed Powell as the "owner" of the evidence, *id*. at ¶ 72.  As another example, Santos swore to an affidavit that confirmed that the invoices created by Doherty contained a "true and detailed account of all property" seized during the search, without "correct[ing]" Doherty's false statement that Powell owned the recovered evidence, or otherwise affirmatively indicating that the arrest evidence was found in contravention of the warrant.  *Id*. at ¶¶ 75-77.  Fogarty likewise purposely withheld from the ADA that the evidence had been found outside the bounds of the warrant.  *See id*. at ¶ 81.

C. The Prosecution

Acting on the representations of Doherty, Santos, and Fogarty, the Office of the Special Narcotics Prosecutor elected to prosecute Powell.  *Id*. at ¶ 82.  Powell was charged with criminal possession of drugs and drug paraphernalia under New York law.  *Id*. at ¶ 83.  Although

Fogarty knew that the criminal complaint charging Powell made materially false representations, he signed it nonetheless.  *See id*. at ¶ 84.  As a result of the false and misleading representations given by, *inter alia*, Fogarty, Santos, and Doherty——specifically, the statements that the officers who conducted the search found Powell in possession of cocaine and drug equipment on the first two floors of the Building——a Grand Jury indicted Powell.  *See id*. at ¶¶ 90-97.

Thereafter, Powell remained in detention for several months.  In early May 2018, just weeks after Powell's arrest, Powell's father passed away.  Due to his confinement, Powell was unable to visit with his father during his final living days; nor was he permitted to attend his father's funeral.  *Id*. at ¶¶ 98-101.

In June 2018, Powell moved to suppress all of the evidence seized during the April 18 search, contending that the officers had exceeded the scope of the warrant by searching the Building's third floor.  *Id*. at ¶ 102.  The prosecution at first opposed Powell's motion, citing "discussions with the police officers involved in the matter"——including Fogarty, Santos, and Doherty——as evidence that the evidence had been properly recovered from the first two floors of the Building.  *Id*. at ¶¶ 103-04.

At a hearing on Powell's motion to suppress, Powell produced photographs showing that the evidence had been found on the third floor.  *Id*. at ¶ 106.  The presiding judge ordered the prosecution and defense counsel to inspect the Building in person to determine whether the photographs corroborated Powell's argument.  *Id*. at ¶¶ 107-08.  After an inspection of the Building, the prosecution conceded that the evidence had been seized from the third floor and, in September 2018, dropped all criminal charges against Powell.  *Id*. at ¶¶ 108-11.  Powell was released from jail.  In all, he had been in detention approximately five months.

### Procedural History

Powell commenced this suit in December 2019, bringing 16 counts principally for false arrest, malicious prosecution, deprivation of due process, failure to intercede, and civil

rights conspiracy, in violation of the FTCA, *Bivens*, 42 U.S.C. § 1983, and New York State law.

Compl. at ¶¶ 117-203.  Relevant for present purposes, Powell brings the following counts against

Defendant Santos:

- <u>False arrest</u>.  Santos and others caused Powell to be arrested and charged with drug possession and related charges, despite knowing that probable cause did not exist, in violation of his Fourth Amendment rights as made actionable under *Bivens*.  ("Count IV").  *Id*. at ¶¶ 138-42.

- <u>Malicious prosecution</u>.  Santos and others caused Powell to be prosecuted after intentionally withholding information that would have eliminated any probable cause against him, and despite the fact that Powell was innocent, in violation of his Fourth Amendment rights as made actionable under *Bivens*.  ("Count V").  *Id*. at ¶¶ 143-48.

- <u>Due process deprivation</u>.  Santos and others deprived Powell of his right to a fair trial by withholding material exculpatory evidence as to the location where the evidence was taken, in violation of his Fourteenth Amendment rights as made actionable under *Bivens*.  ("Count VI").  *Id*. at ¶¶ 149-55.

- <u>Failure to intercede</u>.  Santos and others had opportunities to intercede on Powell's behalf to prevent his arrest, prosecution, and imprisonment, but declined to do so, in violation of his rights made actionable under *Bivens*. ("Count VII").  *Id*. at ¶¶ 156-160.

- <u>Civil rights conspiracy</u>.  Santos and others agreed to deprive Powell of his right to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivations of liberty without due process of law, in violation of his Fourth and Fourteenth Amendment rights as made actionable under *Bivens*.  ("Count VIII").  *Id*. at ¶¶ 161-164.

Santos filed her motion to dismiss on May 21, 2020.  Mtn. to Dismiss, ECF No. 44; Def. Mem.,

ECF No. 45.  The motion became fully briefed on July 10, 2020.  *See* Pl. Opp. Mem., ECF No.

49; Def. Reply Mem., ECF No. 50.

## Discussion

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

court must "accept as true all of the factual allegations contained in the complaint," *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 572 (2007), draw "all inferences in the light most favorable to

the non-moving party's favor," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007),

and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotation marks omitted).

    A. <u>*Bivens*</u>

        In *Bivens*, the Supreme Court held that "a person claiming to be the victim of an

unlawful arrest and search could bring a Fourth Amendment claim for damages … even though

no federal statute authorized such a claim." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020).

The Court subsequently extended *Bivens* to "cover two additional constitutional claims:  in *Davis*

*v. Passman*, 442 U.S. 228 (1979), a former congressional staffer's Fifth Amendment claim of

dismissal based on sex, and in *Carlson v. Green*, 446 U.S. 14 (1980), a federal prisoner's Eighth

Amendment claim for failure to provide adequate medical treatment." *Id*.  But after recognizing

these three *Bivens* claims, "the Court changed course." *Id*.

        The Court has explained that "*Bivens*, *Davis*, and *Carlson* were the products of an

era when the Court routinely inferred 'causes of action' that were 'not explicit' in the text of the

provision that was allegedly violated," and that, "[i]n later years, [the Court] came to appreciate

more fully the tension between this practice and the Constitution's separation of legislative and

judicial power." *Id*. (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017)).  Accordingly, the

Court has expressed its "reluctan[ce] to create new causes of action," recognizing that "Congress

is best positioned to evaluate 'whether, and the extent to which, … liabilities should be imposed

upon individual officers and employees of the Federal Government.'" *Id*. (quoting *Abbasi*, 137

S. Ct. at 1856)).  In light of this "change in the Court's approach to recognizing implied causes

of action, … the Court has made clear that expanding the *Bivens* remedy is now a *disfavored*

judicial activity." *Abbasi*, 137 S. Ct. at 1857 (emphasis added) (quotation marks omitted).

    If anything, "[d]isfavored" understates the change of course.  The Court has "gone so far

as to observe that if 'the … three *Bivens* cases had been … decided today,' it is doubtful that [the Court] would have reached the same result."  *Hernandez*, 140 S. Ct. at 742-43 (quoting *Abbasi*, 137 S. Ct. at 1856) (some alterations omitted).  This observation tracks history: For "almost 40 years," the Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Id*. at 743.  In all, when facing *Bivens* claims in the modern era, the Court's main "watchword is caution."  *Id*. at 742; *see Abbasi*, 137 S. Ct. at 1856 (cautioning against creating additional implied remedies "no matter how desirable that might be as a policy matter").

The Supreme Court's decision in *Abbasi* outlines a "two-step framework for determining whether a *Bivens* remedy may properly be implied."  *Bueno Diaz*, 2020 WL 1082482, at *3.  At the first step, "a court must decide whether a plaintiff seeks damages in a new *Bivens* context," and to do so, "must evaluate whether 'the case is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court.'"  *Id*. (quoting *Abbasi*, 137 S. Ct. at 1859).  Although the Court has not yet "endeavor[ed] to create an exhaustive list of differences that are meaningful enough to make a given context a new one," it has provided some instructive examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859-60.  The Court has stressed that its "understanding of a 'new context' is broad."  *Hernandez*, 140 S. Ct. at 743.  While "[s]ome differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context," *id*. at 1865, the 'new context' test is not demanding and can be satisfied even with minor extensions and even where the claim arises out of the same constitutional provision as was previously recognized under *Bivens*, *see Abbasi*, 137

S. Ct. at 1864 ("[E]ven a modest extension is still an extension."); *Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); Note, *Constitutional Remedies——Bivens Actions——Ziglar v. Abbasi*, 131 Harv. L. Rev. 313, 318 (2017) ("The new context inquiry is quite exacting...")

If a given claim "does not present a new *Bivens* context, then such relief is not precluded, and the court may evaluate the claim for damages on the merits." *Bueno Diaz*, 2020 WL 1082482, at *3. If, on the other hand, "the court determines that the context is new, then it must proceed to analyze whether there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id*. (quoting *Abbasi*, 137 S. Ct. at 1857). This analysis comprises the second step of the *Abbasi* framework.

The "special factors" step of the test assesses "whether there are any factors that 'cause a court to hesitate before' 'allowing a damages action to proceed.'" *Bueno Diaz*, 2020 WL 1082482, at *6 (quoting *Abbasi*, 137 S. Ct. at 1858). This analysis "is focused on 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Id*. (quoting *Abbasi*, 137 S. Ct. at 1858). As with the first step of the *Abbasi* framework, the Court has "not attempted to create an exhaustive list of factors that may provide a reason not to extend *Bivens*," but has highlighted as useful touchstones, the "risk of interfering with the authority of the other branches," any reason to believe that "Congress might doubt the efficacy or necessity of a damages remedy," and the existence of alternative means of recovery. *Hernandez*, 140 S. Ct. at 743, 749; *see also Abbasi*, 137 S. Ct. at 1863, 1865 (noting that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action" and "when alternative methods of relief are available, a *Bivens* remedy usually is not").

Even before *Abbasi* and *Hernandez* underscored the restrictiveness of the *Bivens* inquiry, the Second Circuit sitting *en banc* concluded that "the only relevant threshold——that a factor 'counsels hesitation'——is remarkably low.  It is at the opposite end of the continuum from the unflagging duty to exercise jurisdiction." *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009). Hesitation is "a pause, not a full stop, or an abstention; and to counsel is not to require." *Id*.  As such, hesitation is counseled "whenever thoughtful discretion would pause even to consider." *Id*. Whatever its precise contours, "'[s]pecial factors' is an embracing category." *Id*. at 574.

* * * * *

With these principles in mind, I turn to the instant motion.  Santos argues that Powell's claims against her——for false arrest; malicious prosecution; deprivation of due process; failure to intercede; and civil rights conspiracy——seek to extend *Bivens* and that 'special factors' counsel hesitation against such extensions.  *See* Def. Mem. at 5-14.  For the reasons that follow, I agree that Powell's failure to intercede and civil conspiracy claims must be dismissed.  However, I disagree as to Powell's false arrest, malicious prosecution, and due process claims, and find that all three are viable under *Bivens*.

### 1. False arrest

*Bivens* "concerned an allegedly unconstitutional arrest and search carried out in New York City." *Hernandez*, 140 S. Ct. at 744 (citing *Bivens*, 403 U.S. at 389).  The Court held that the petitioner had a right of action against federal officers who had conducted a warrantless search and arrested him in his home in violation of the Fourth Amendment.  *See Bivens*, 403 U.S. at 397.  In the instant matter, Powell contends that he was unconstitutionally arrested, in his New York City home, by federal officers after the officers conducted an extralegal, warrantless search of the Building's third floor, in violation of his Fourth Amendment rights.  *See* Compl. at ¶¶ 39-58.  The similarity of *Bivens* and this dispute is readily apparent, *see*, *e.g.*, *Turkmen v. Hasty*, 789

F.3d 218, 275 (2d Cir. 2015) (Raggi, *J.*, concurring) (denoting "false arrest" a "familiar *Bivens*

context[]"), *rev'd in part on other grounds*, *Abbasi*, 137 S. Ct. 1843, if not to Santos.

    Questing to squeeze daylight between *Bivens* and this case where there is none,

Santos asserts that here, unlike in *Bivens*, the "officers deliberately went beyond the parameters

of the warrant" by searching the third floor, presumably in contrast to *Bivens* where there was no

warrant at all.  Def. Mem. at 7.  This distinction is entirely without difference.  Whether officers

conduct a search without a warrant or conduct a search in brazen disregard of the scope of a

warrant makes no difference here given that that *Bivens* and later cases have sustained a right to

recover for Fourth Amendment search-and-seizure violations in roughly similar cases to *Bivens*

without restricting the right based on the degree of Fourth Amendment error.  *See Prado v.

Perez*, --- F.Supp.3d ---, 2020 WL 1659848, at * 5 (S.D.N.Y. Apr. 3, 2020) (petitioner sued "for

an allegedly unconstitutional arrest and search" and the court held that this did not "differ in a

meaningful way from the core *Bivens* context," rejecting defendants' argument that the claim

was different because the government agents had "an administrative warrant … rather than no

warrant at all"); *cf. Abbasi*, 137 S. Ct. at 1856 ("[T]his opinion is not intended to cast doubt on

the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it

arose.").  And just as there is clear 'judicial guidance' on the impropriety of warrantless searches,

so too is there ample guidance on the impropriety of searches that exceed a warrant's scope.  *See

Horton v. California*, 496 U.S. 128, 140 (1990).  The remedy fashioned in *Bivens* allows those

injured by "officers who violated the prohibition against unreasonable search[es] and seizures" to

seek damages, *Abbasi*, 137 S. Ct. at 1854, and that is precisely what Powell seeks to do here.  In

sum, Powell's false arrest claim is squarely within the context faced in *Bivens* and as such does

not present a "new context."[4]

---

[4] The two cases cited by Santos for a contrary result are distinguishable.  *See* Def. Mem. at 7.  In *Oliveras v. United States Dep't of Homeland Sec. Investig. Spec. Response Team Officer Robert Basile*, 440 F.Supp.3d 365 (S.D.N.Y.

### 2. Malicious prosecution

Powell's malicious prosecution claim, on the other hand, does not fit into the *Bivens* mold. Neither *Bivens* nor *Davis* nor *Carlson* involved a malicious prosecution claim. In light of this difference, courts in the Second Circuit and in other circuits have held that malicious prosecution claims present a new *Bivens* context. *See Butler v. Hesch*, No. 116 Civ. 1540, 2020 WL 1332476, at *11-12 (N.D.N.Y. Mar. 23, 2020) *id.* at *12 (collecting cases from the Third, Fifth, Eighth, and Tenth Circuits finding that claims of malicious prosecution would require an extension of *Bivens*).

I agree with these decisions. Powell's malicious prosecution claim differs in focus from the claims pursued in *Bivens*. Rather than a claim of false arrest, Powell's malicious prosecution claim rests on the allegation that Santos, along with others, "initiated and continued a prosecution against him without probable cause and that they misled prosecutors and the court by omitting material and exculpatory information when bringing charges against him." *Butler*, 2020 WL 1332476, at *12; Compl. at ¶ 125. Neither *Bivens*, nor *Davis*, nor *Carlson* addressed conduct of this kind. *Butler*, 2020 WL 1332476, at *12; *see also Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019) ("[I]nformation-gathering and case-building activities are a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*.").[5]

---

2020), the petitioner claimed to be the "unwitting victim of collateral damage stemming from Defendants' execution of an arrest warrant" after the officers detonated explosives in the course of executing a valid warrant in a separate area of petitioner's building. *Id.* at 371. There, the court noted that petitioner's claims were factually distinct from *Bivens*, implicated an uncertain area of law as to the propriety of using explosives "in an outdoor area, in the course of executing an arrest warrant, and inadvertently injur[ing] a non-target of that warrant," and involved the right to be free from excessive force rather than the privacy right to be free from unconstitutional searches. *See id.* at 372-73. And *Martinez v. D'Agata*, No. 16 Civ. 44, 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019), addressed petitioner's claim for "failure to intervene when excessive force was used to effectuate an arrest," not the right to be free from warrantless searches, and in any event involved an arrest effected pursuant to a valid warrant wherein the arrest was not challenged for infidelity to the warrant but for its alleged use of excessive force. 2019 WL 6895436, at *5-6. Neither *Oliveras* nor *Martinez* involved a false arrest claim leveled on precisely the same grounds as *Bivens*: an arrest made after officers unconstitutionally searched the claimant's home.

[5] Powell argues that *Butler* and *Farah*, among other similar authority, should be ignored because they "both fail to recognize that Second Circuit precedent recognizes *Bivens* actions for malicious prosecution." Pl. Opp. Mem. at 9. But the cases cited by Powell do not substantiate this proposition. Take *Barone v. United States*, 722 F. App'x 57

### 3. Due process deprivation

Powell's due process claim, mistakenly brought against Santos (a federal officer) under the Fourteenth rather than the Fifth Amendment,[6] likewise arises in a different context from previously recognized *Bivens* actions. Powell's due process claim is based on the same conduct as his malicious prosecution claim——the fabrication and withholding of evidence to

(2d Cir. 2018) first. *Barone*, a non-precedential summary order, affirmed the *dismissal* of a malicious prosecution claim brought under *Bivens*, on the grounds that probable cause existed for the prosecution, and without addressing whether malicious prosecution is viable under *Bivens*. What's more, the district court opinion reviewed by *Barone* was decided in February 2017, several months before *Abbasi*, and several years before *Hernandez*. It is therefore no surprise that the district court assumed the existence of this species of *Bivens* action without any discussion and also without applying *Abbasi*'s two-step framework. *See Barone v. United States*, No. 12 Civ. 4103, 2017 WL 478259, at *9 (S.D.N.Y. Feb. 6, 2017). The *Barone* summary order has been cited only a single time, in a situation having nothing to do with *Bivens*. *See Williams v. City of New York*, 409 F.Supp.3d 137, 145 (E.D.N.Y. 2019). The other case cited by Powell, *Green v. Montgomery*, 219 F.3d 52 (2d Cir. 2000), no better serves his purposes. *Green* was decided around twenty years before *Abbasi* and *Hernandez*, and involved claims brought under 42 U.S.C. § 1983 and not *Bivens*. In its entirety, the *Green* opinion makes a single fleeting reference to *Bivens* in a footnote, in which it is observed that "the New York presumption of probable cause, if unrebutted, is sufficient to block a *Bivens* claim for malicious prosecution." *Id*. at 60 n.2. No challenge to the availability of a *Bivens* malicious prosecution action was discussed and, given that the opinion addressed claims under Section 1983, any allusion to *Bivens* was at most dictum. It is "beyond debate that '[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'" *Ret. Plans Comm. of IBM v. Jander*, 140 S. Ct. 592, 597 (2020) (Gorsuch, *J.*, concurring) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)). This maxim is all the more worthy of attention here, given the Supreme Court's later decisions in *Abbasi* and *Hernandez*.

As a final note, Plaintiff contends that *Butler* should not be read as contrary to a Sixth Circuit opinion, which found that a malicious prosecution claim may proceed under *Bivens*. *See Jacobs v. Alam*, 915 F.3d 1028, 1038-39 (6th Cir. 2019). This is wrong for a few reasons. First, *Butler* expressly declined to follow *Jacobs*, concluding that the long list of contrary authority listed by *Butler* and referenced *supra*, is "persuasive." *Butler*, 2020 WL 1332476, at *12. Second, while *Butler* distinguishes *Jacobs* as involving the "warrantless entry by federal agents into the plaintiff's home" and therefore being "aligned with the factual scenario presented by *Bivens*," *id.*, these referenced facts have to do with searches and seizures, and not with the actual mechanics of a malicious prosecution claim (indeed, that is why *Butler* references these differences in rejecting a *Bivens* action for malicious prosecution. Finally, *Jacobs* itself appears to over-read *Abbasi*. *Jacobs* relies heavily on the language from *Abbasi* referring to the "recurrent sphere of law enforcement" as reason to uphold a *Bivens* remedy in a range of contexts, including malicious prosecution. *See Jacobs*, 915 F.3d at 1037-39. But the phrase in *Abbasi*——"*this* common and recurrent sphere of law enforcement" ——was not referring to "law enforcement" generally, but to one incarnation of enforcement activity, namely "the search-and-seizure context" in which *Bivens* arose. *Abbasi*, 137 S. Ct. at 1856-57; *see Abdoulaye v. Cimaglia*, No. 15 Civ. 4921, 2018 WL 1890488, at *6 (S.D.N.Y. Mar. 30, 2018) ("[T]he common presence of law enforcement in a claim for constitutional violations against federal agents does not end the inquiry with which the Court is tasked.").

[6] Because Santos she was operating in her capacity as a member of a federal task force, and because Powell alleges that she was acting under "color of Federal law," Compl. at ¶ 18, she is not bound by Fourteenth Amendment's due process restrictions. *See* Def. Mem. at 8; *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) ("The Amendment applies only to *state* action.") (emphasis added); *accord Maloney v. Soc. Sec. Admin.*, No. 02 Civ. 1725, 2006 WL 1720399, at *8 (E.D.N.Y. June 19, 2006) ("[T]he Fourteenth Amendment does not apply to the federal government, but only to acts by a State."), *aff'd*, 517 F.3d 70 (2d Cir. 2008). From here on out, I treat this claim as though it were properly brought under the Fifth Amendment.

pervert a criminal prosecution——and therefore also presents a new *Bivens* context. *Compare* Compl. at ¶¶ 143-48 *with* Compl. at ¶¶ 149-55.

Powell attempts in his briefing to demonstrate that the Second Circuit recognizes a *Bivens* due process claim for fabrication of evidence. But the cases upon which Powell relies simply do not say what Powell implies they say. Powell cites primarily to *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) and *Ganek v. Leibowitz*, 874 F.3d 73 (2d Cir. 2017). Pl. Mem. at 10, 16. However, *Ganek* merely "assume[d], without deciding," that the petitioner "could successfully clear possible threshold obstacles to his pursuit of such a due process claim," and identified as one potential hurdle, "the availability of a *Bivens* remedy for such a due process claim" under *Abbasi*. *Ganek*, 874 F.3d at 90 and n.11. *Ganek* even took notice of *Zahrey*, describing that as a case that, many years before *Abbasi*, "recogniz[ed] without discussion, [a] *Bivens* claim for fabrication of evidence." *Id.* at 90 n.11.[7] In short, Powell's due process claim cannot be slotted into a previously approved *Bivens* context.

### 4. Failure to intercede

Powell alleges that Santos failed to intervene to prevent his malicious prosecution and false arrest. *See* Compl. at ¶ 158.

There is scant post-*Abbasi* authority in this Circuit considering whether a failure to intervene claim presents a new *Bivens* context at step one of the *Abbasi* analysis. However, I need not traverse this uncharted *Bivens* territory in this case. Even if I were to find that Powell's

---

[7] Unable to find solid ground in this Circuit, Powell again turns elsewhere. Pointing to the Sixth Circuit's decision in *Jacobs*, Powell argues that due process claims for "fabrication of evidence" are "garden-variety *Bivens* claims." *Jacobs*, 915 F.3d at 1038. *Jacobs* is neither controlling nor persuasive. *Jacobs* batches together the "fabrication of evidence" claim with other counts of "excessive force, false arrest, malicious prosecution, … and civil conspiracy," without any substantive analysis as to why a "fabrication of evidence" claim in particular satisfies the first step of the *Abbasi* test. Worse, the principal reasoning explaining the Sixth Circuit's determination that this fabrication claim does not break new *Bivens* ground, is the Court's statement that it had *previously* recognized a *Bivens* action for this type of claim *prior to Abbasi*——needless to say, the cases relied upon in *Jacobs* did not apply the framework later established by the Supreme Court to fabrication of evidence claims under *Bivens*. *See Jacobs*, 915 F.3d at 1038-39 (citing, *inter alia*, *Webb v. United States*, 789 F.3d 647, 667 (6th Cir. 2015)).

failure to intervene claim fit into an established *Bivens* mold, I would still dismiss. The "'failure to intervene theory is inapplicable'" if the officer at issue is a "'direct participant in the allegedly unlawful conduct.'" *Ulerio v. City of New York*, No. 18 Civ. 2155, 2018 WL 7082155, at *7-8 (S.D.N.Y. Dec. 20, 2018) (quoting *Sanabria v. Detective Shawn Tezlof*, No. 11 Civ. 6578, 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016)). The Complaint here principally describes Santos as participating directly in both his false arrest and malicious prosecution, adding far less robust allegations regarding her purported failure to intervene. *See* Compl. at ¶ 55 (alleging that Santos knowingly exceeded the scope of the warrant and searched the third floor of the Building), ¶ 75 (alleging that Santos swore to an affidavit that falsely represented that the incriminating evidence taken from the Building was found within the warrant's cope); ¶¶ 156-60 (alleging generally that Santos "had opportunities to intercede on behalf of Calvin Powell"). This flavor of "conclusory allegation … does not plausibly allege that [the] officer was not directly involved in causing the constitutional harm," *Corso v. City of New York*, No. 17 Civ. 6096, 2018 WL 4538899, at *12-13 (S.D.N.Y. Sept. 20, 2018), and given that the Complaint plainly describes Santos as a primary, rather than secondary, wrongdoer, I see no need to allow this tag-along failure to intercede claim to muddle this case. Powell's failure to intercede claim (Count VII) as to Santos is dismissed.

  *5. Civil rights conspiracy*

  Powell alleges that Santos and others conspired to deprive him of his right to be free from false arrest and malicious prosecution, and his right to due process of law. *See* Compl. at ¶¶ 162-63. As with Powell's due process and failure to intercede claims, *see supra*, I need not reach the question of whether the civil rights conspiracy count is actionable under *Bivens*, as this claim is doomed by other pleading deficiencies.

  To state a claim for civil rights conspiracy, Powell must allege "(1) an agreement between two or more state actors …; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200

15

F.3d 65, 72 (2d Cir. 1999).[8]  Given "the relative ease with which conspiracy allegations may be brought, and the substantial disruption of governmental function that they can cause," a claimant is required to furnish "'more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive [the claimant] of his constitutional rights.'"  *Nwanze v. Phillip Morris, Inc.*, 100 F.Supp.2d 215, 219 (S.D.N.Y. 2000), *aff'd sub nom.*, *Nwanze v. Morris*, 6 F. App'x 98 (2d Cir. 2001) (quoting *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990) and collecting cases).

Applying the requisite liberality owed to Powell generally at this stage and to conspiracy claims specifically, I find that the Complaint's conspiracy count rests on a foundation too anemic to survive Santos's motion to dismiss.  The Complaint surely alleges that Santos and others took actions that violated his constitutional rights, such as disregarding the limitations of a warrant and misrepresenting evidence to a grand jury.  But only once in the Complaint's factual recitation does Powell actually charge Santos with "agreement," an indispensable element:

> On information and belief, the law enforcement officers, including Detective Fogarty, Detective Santos, and Police Officer Doherty, agreed to falsely claim that they had recovered the drugs and other criminal evidence in Mr. Powell's possession within the bounds of their warrant…

Compl. at ¶ 65.  Powell must do more than append, "[o]n … belief," the label of "agreement" to otherwise independent charges of constitutional misconduct, in order to state a conspiracy claim. Powell's civil rights conspiracy claim (Count III) is dismissed as to all Defendants.

### 6. Extension of Bivens

Powell's claim is that Santos and others willfully violated the Fourth and Fifth Amendments by perverting the integrity of the judicial process through the introduction of false evidence against him.  This Circuit has long recognized that, "To hold that police officers … are … free to fabricate [evidence] at will, would make a mockery of the notion that Americans enjoy

---

[8] These elements are taken from a claim brought under 42 U.S.C. § 1983 for civil rights conspiracy——I assume, as do the parties, without deciding, that these elements are the same under *Bivens*.

the protection of due process of the law and fundamental justice." *Ricciuti v. N.Y.C. Trans. Auth*, 124 F.3d 123, 130 (2d Cir. 1997). The question here is whether, under the modern incarnation of the *Bivens* doctrine, "special factors" counsel hesitation against extending *Bivens* and require that this Court acquiesce to a "mockery … of due process of the law and fundamental justice." For the reasons that follow, no special factors counsel against allowing Powell's claims to proceed.

Santos contends that Powell "has a potential, alternative method of relief through the FTCA." Def. Mem. at 10. I am unpersuaded. True, the FTCA provides a cause of action for recovery against the United States for "malicious prosecution." *See* 28 U.S.C. §§ 2674, 2680(h). But the FTCA facilitates only liability in "tort" against the United States itself, 28 U.S.C. § 2674, whereas the *Bivens* remedy "vindicates violations of constitutional rights by federal employees," *Bueno Diaz*, 2020 WL 1082482, at *6. The FTCA aims to protect citizens from a different form of harm and does so without holding responsible individual officers——as the Supreme Court has explained, this divergence renders *Bivens* and the FTCA "parallel," nonfungible causes of action. *See Carlson*, 446 U.S. at 20 (ruling it is "crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action"). And as for Powell's due process claim, Santos does not dispute that the FTCA's limitation to *intentional torts* disqualifies that statute as a colorable alternative remedy for Fifth Amendment *constitutional* violations.

In *Carlson*, the Supreme Court identified several meaningful differences between claims brought under the FTCA versus under *Bivens*. To name just a few: First, "[b]ecause the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States." *Id*. at 21. Second, although the Court has not addressed the question directly, it has "indicate[d] that punitive damages may be awarded in a *Bivens* suit." *Id*. at 21-22. The FTCA prohibits punitive damages. *See* 28 U.S.C. 2674. Third, *Bivens* provides for the constitutional guarantee of trials by jury, whereas the FTCA does not make jury trials available. *Carlson*, 446 U.S. at 22 (citing 28 U.S.C. § 2402). In all, the Court determined, the

17

"FTCA is not a sufficient protector of the citizens' constitutional rights." *Id*. at 23.  And in the ensuing years, the Court has, on more than one occasion, made similar statements regarding the interplay between the FTCA and *Bivens*.  *See Bush v. Lucas*, 462 U.S. 367, 378 (1983) (Congress never "expressly declared the FTCA remedy to be a substitute for a *Bivens* action"); *Wilkie v. Robbins*, 551 U.S. 537, 553 (2007) (citing *Carlson*'s reasoning approvingly).

      I recognize that several courts in this District have found the FTCA to qualify as an alternative remedy to *Bivens*.[9]  Many of these decisions have taken the language in *Abbasi* as to *Carlson* perhaps being decided differently if it were addressed today to mean that, whereas the "FTCA was once considered parallel and complementary to a *Bivens* remedy," that is "no longer the case." *Sosa*, 2020 WL 1940550, at *4.  However, like Judge Torres in her recent *Bueno Diaz* decision, I decline to adopt this reasoning.  The Supreme Court has not been bashful in signaling its skepticism of the *Bivens* remedy——if the Court intended to overrule *Carlson*, I am quite sure it would simply do so.  *See, e.g., Doe v. United States*, 381 F.Supp.3d 573, 615 (M.D.N.C. 2019) ("If the Supreme Court wanted to overrule its earlier precedent in *Abbasi*, it would have done so explicitly."); *Engel v. Buchan*, 710 F.3d 698, 708 (7th Cir. 2013) (observing that "the ground has shifted under *Bivens*, shaking its doctrinal foundations," but reasoning that, "shaky or no, *Bivens* remains the law, and we are not free to ignore it").  The FTCA standing on its own does not give the Court reason to hesitate in extending *Bivens*.

      From there, Santos argues that "allowing a damages remedy in malicious prosecution *Bivens* action," would interfere with "investigative and prosecutorial functions."[10]

---

[9] *See Abdoulaye*, 2018 WL 1890488, at *7; *Sosa v. Bustos*, No. 17 Civ. 417, 2020 WL 1940550, at *4 (S.D.N.Y. Apr. 22, 2020); *Rivera v. Samilo*, 370 F.Supp.3d 362, 369-70 (E.D.N.Y. 2019); *Martinez*, 2019 WL 6895436, at *7; *Morgan v. Shivers*, No. 14 Civ. 7921, 2018 WL 618451, at *5-6 (S.D.N.Y. Jan. 29, 2018); *Style v. Mackey*, No. 17 Civ. 1691, 2020 WL 3055319, at *4 (E.D.N.Y. June 8, 2020); *Oliveras*, 440 F.Supp.3d at 373.

[10] Santos does not raise this same argument with respect to Powell's due process claim.

18

Def. Mem. at 11 (quotation marks omitted).  Again, I am not convinced.  Unlike *Abbasi* (which concerned matters of national security and challenges to high-level Executive branch policy, *see Abbasi*, 137 S. Ct. at 1860-63), or *Hernandez* (which concerned issues of international relations, national security, and immigration policy; took place against the backdrop of federal statutes that limited recovery for any injuries occurring abroad; and had garnered specific attention from Congress, *see Hernandez*, 140 S. Ct. at 744-49), the malicious prosecution claim here challenges the same species of run-of-the-mill, low-level law enforcement behavior at issue in *Bivens* itself.

Tellingly, the potential negative "interference" identified by Santos——that allowing Powell's malicious prosecution *Bivens* claim here would interfere with prosecutorial discretion and further disincentivize law enforcement from sharing information with prosecutors, Def. Mem. at 11——is inapplicable to the present case.  Powell claims that Santos lied in sworn statements in order to fabricate evidence to support his meritless prosecution.  Prosecutors surely have discretion as to a wide range of actions, but nowhere in this prerogative is the prosecutorial right to bring a case based on outright lies.  And if Santos is right that a *Bivens* claim here would "disincentivize law enforcement" from fabricating evidence, Def. Mem. at 11, then that is all the more reason to permit Powell's claim to proceed.  *Cf., e.g., Lanuza v. Love*, 899 F.3d 1019, 1033 (9th Cir. 2018) ("[A] *Bivens* action here will produce widespread litigation only if ICE attorneys routinely submit false evidence, which no party argues is the case.  And if this problem is indeed widespread, it demonstrates a dire need for deterrence, validating *Bivens*'s purpose."); *Engel*, 710 F.3d at 708 (applying *Bivens* to *Brady* claims and noting, "we cannot see how prosecutors and law-enforcement officers could be 'overdeterred' in the disclosure of exculpatory material to criminal defendants").

Because the Supreme Court has made clear that separation of powers principles are "central" to the *Bivens* analysis, *see Hernandez*, 140 S. Ct. at 743, I close this discussion with a response to the question of "whether the Judiciary is well suited, absent congressional action or

instruction, to consider and weigh the costs and benefits" of allowing a *Bivens* action to proceed, *Abbasi*, 137 S. Ct. at 1858.  The right Powell seeks to vindicate—whether framed as a malicious prosecution under the Fourth Amendment or a due process violation under the Fifth—is the right of citizens to be free from prosecution on the basis of false evidence adduced by federal officers.

It is no exaggeration to say that this right——which stems from the legal system's unflagging obligation to pursue truth and justice——lies near the core of what the Judicial Branch is entrusted with securing.  *See Sherman v. United States*, 356 U.S. 369, 380 (1958) (Frankfurter, *J.*, concurring) ("The federal courts have an obligation to set their face against enforcement of the law by lawless means or means that violate rationally vindicated standards of justice.").  The Ninth Circuit, in extending *Bivens* to an alien's claim that a federal immigration officer falsified evidence to support removal proceedings against the alien, explained why lawsuits involving the falsification of evidence by government officers are well-suited to Article III adjudication:

> Judges are particularly well-equipped to weigh the costs of constitutional violations that threaten the credibility of our judicial system.  Indeed, there are few persons better equipped to weigh the cost of compromised adjudicative proceedings than those who are entrusted with protecting their integrity.  And, more often than not, the Judicial Branch, not Congress or the Executive, is responsible for remedying circumstances where a court's integrity is compromised by the submission of false evidence.  Thus, it falls within the natural ambit of the judiciary's authority to decide whether to provide a remedy for the submission of false evidence …

*Lanuza*, 899 F.3d at 1032-33.

I could not agree more.  The right to be free from false testimony and prosecution is essential to the integrity of the judicial process.  And given that malicious prosecution and due process claims are familiar in this court and Circuit, *see, e.g., Lanning v. City of Glens Falls*, 908 F.3d 19, 25-28 (2d Cir. 2018) (discussing at length the federal standard for malicious prosecution actions); *Ganek*, 874 F.3d at 90 (reviewing the elements of a claim for violation of due process); *Garnett v. Undercover Officer COO39*, 838 F.3d 265, 274 (2d Cir. 2016) ("No arrest … gives an

arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee.") (alterations and quotation marks omitted), there are no discernible "difficult[ies] in defining a workable cause of action," *Wilkie*, 551 U.S. at 539.

In sum, in the narrow circumstances alleged here——a federal law enforcement officer fabricating evidence in furtherance of a malicious prosecution, in direct violation of the Fourth Amendment——I conclude that no special factors counsel hesitation toward extension of *Bivens* and deny the motion to dismiss Powell's claims on that basis. Indeed, if I were to permit federal officers to fabricate evidence without repercussions, it would have consequences beyond Powell's case. It would cause society to lose faith that the government plays fair.

B. <u>Personal Involvement</u>

Santos next argues that Powell fails to plead that she was personally involved with the misconduct alleged. *See* Def. Mem. at 12-14; Def. Reply Mem. at 8-9. I disagree. The Complaint alleges that Santos, despite knowing that the warrant only covered the first two floors of the Building, proceeded to search the third floor, *see* Compl. at ¶¶ 55-62; that Santos, despite knowing that the contraband recovered on the third floor belonged to a tenant other than Powell, swore to an affidavit that falsely identified the evidence as belonging to Powell, *see id.* at ¶¶ 63-76; and that Santos was among the officers who orally assured the prosecutors during Powell's motion to suppress proceedings that the evidence was lawfully obtained, *see id.* at ¶¶ 103-04. Santos complains that these allegations charge Santos along with other officers, amounting to an improper "group pleading." Def. Mem. at 13. But the fact that Santos is alleged to have violated Powell's constitutional rights in the company of other officers does not somehow erase the fact that Santos is alleged to have violated Powell's rights——when it comes to unconstitutional

searches, seizures, and misrepresentations of evidence, there is no such thing as safety in numbers.[11]

  C. <u>Qualified Immunity</u>

    Finally, Santos contends that Powell's claims are barred by qualified immunity. *See* Def. Mem. at 19-20.  The burden to establish this defense falls on Santos, *see*, *e.g.*, *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013), and she has failed to meet it.  "Qualified immunity" "protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* (quotation marks omitted).

    Powell contends that Santos——albeit with some help——arrested him despite knowing that she had exceeded the scope of the search warrant, and made false representations in furtherance of Powell's ultimately-dismissed prosecution.  The rights to be free from warrantless searches and fabricated evidence are, unsurprisingly, "clearly established."  *See, e.g., United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) ("A search must be confined to the terms and limitations of the warrant authorizing it."); *Simon v. City of New York*, 893 F.3d 83, 88 (2d Cir. 2018) ("[I]t is self-evident that a seizure conducted pursuant to an arrest warrant must conform to

---

[11] The cases cited by Santos in her brief are inapposite, both because they involved far more egregious complaints and because the decisions recognized that specificity is required only to the degree that it puts officers on notice of their allegedly improper acts.  Here, if Santos wants to know what Powell complains of, she need only review the Complaint, which charges her with knowingly exceeding the limitations of a warrant, and knowingly swearing to an affidavit that incorrectly attributed the recovered drugs and drug paraphernalia to Powell.  *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal where *pro se* plaintiff, after having the opportunity to amend the complaint, "failed to identify any factual basis for the legal claims made," and failed to "identify which defendants were alleged to be responsible for which alleged violations," while also noting that a complaint need not be a "model of clarity or exhaustively present the facts alleged" so long as it gives defendants "fair notice" of claims against them) (quotation marks omitted); *Sanusi v. Dep't of Homeland Sec.*, No. 06 Civ. 2929, 2014 WL 1310344, at *6 (E.D.N.Y. Mar. 31 2014) (dismissing where plaintiff "only broadly contend[ed] that defendants were responsible for the length and conditions of his confinement" without otherwise alleging their personal involvement).

And for the same reasons discussed in this subsection, Santos's argument that Powell has failed to properly plead to his malicious prosecution claim is meritless.  The Complaint specifies that Santos knowingly exceeded the scope of the warrant, falsely represented that the evidence was recovered from premises authorized for search by the warrant, and did not correct Doherty's materially inaccurate arrest report.

the terms of that warrant.") (quotation marks omitted); *United States v. Nejad*, 436 F.Supp.3d 707, 733 (S.D.N.Y. 2020) (the "[s]eizure of items outside the scope of a search warrant is unconstitutional…") (quotation marks omitted); *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959) ("The principle that a State may not knowingly use false evidence … to obtain a tainted conviction" is "implicit in any concept of ordered liberty"); *Zahrey*, 221 F.3d at 355 ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer."); *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015) ("[E]veryone possesses the … right not to be deprived of liberty as a result of the fabrication of evidence…") (quotation marks omitted).  The Second Circuit has held that, absent "extraordinary circumstances, [i]f the law was clearly established, the immunity defense ordinarily should fail."  *Vincent*, 718 F.3d at 166 (quotation marks omitted).  Santos has failed to identify any "extraordinary circumstances," and, thus, she has failed to demonstrate entitlement to the defense of qualified immunity.[12]  No reasonable officer would have thought it lawful to wholly disregard and violate the terms of a warrant, much less thought it lawful to shroud this violation for purposes of sustaining a criminal prosecution.

## Conclusion

For the foregoing reasons, Santos's motion to dismiss is granted in part and denied in part.  With respect to Powell's false arrest (Count IV), malicious prosecution (Count V), and due process (Count VI) claims, the motion is denied.  In all other respects the motion is granted.  The parties shall appear for a status conference at 10:00 a.m. on September 11, 2020, to

---

[12] In arguing otherwise, Santos contorts Powell's claims.  For instance, Santos describes the Complaint as alleging that she "omitted to include an additional statement correcting a purportedly false statement as to which apartment was searched," and intimates that Powell's claim is that Santos was not "entitled to rely on the search warrant signed by the judge," Def. Mem. at 20.  But Powell in fact alleges that Santos falsely maintained that the drugs found in the Building were in Powell's possession (*i.e.*, found on the first two floors of the apartment and not on the third floor, which—aside from being outside the warrant—bore indicia of belonging to another person), disregarded the scope of the warrant, and was among the officers who assured prosecutors that the contraband was found during a search that abided by the terms of the warrant during the course of proceedings on Powell's state court motion to suppress.

chart a course for the remainder of this litigation.  The Clerk is hereby directed to close the open

motion (ECF No. 44).

SO ORDERED.

Dated:     August 31, 2020                          _____/s/_____
           New York, New York                           ALVIN K. HELLERSTEIN
                                                        United States District Judge