UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
CALVIN POWELL,

                        Plaintiff,

    -against-

UNITED STATES OF AMERICA, et al.,

                        Defendants.
---------------------------------------------------------------- x

**OPINION & ORDER DENYING MOTIONS TO DISMISS**

19 Civ. 11351 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Calvin Powell seeks to recover against several law enforcement officers who, Plaintiff alleges, engaged in an unlawful search and fabricated evidence used to arrest, imprison, and prosecute Plaintiff. As relevant here, Plaintiff seeks to recover under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). Two of the individual defendants—Agents Tamweber and Maher (the "Defendants")—move to dismiss the counts of the Second Amended Complaint against them. For the reasons that follow, Defendants' motions are denied.

### BACKGROUND[1]

        In 2018, Plaintiff Powell owned a three-story apartment building with one unit on each floor. Plaintiff lived in the first-floor unit with his family while tenants occupied the second- and third-floor units. On April 18, 2018, the Defendants and other law enforcement officers executed a search warrant for the first and second floors of Powell's apartment building.

---

[1] The factual background of this case is fully detailed in my Opinion & Order Granting in Part and Denying in Part Defendant Johanna Santos' Motion to Dismiss ("Santos MTD Opinion"). ECF No. 51. I provide here only a cursory summary, drawn from the SAC and assumed true for purposes of the pending motions. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

1

The officers found no contraband there. Although the warrant was limited to the first two floors of the building, the officers exceeded the scope of the warrant and searched the third-floor apartment unit and a closet on the third-floor landing. There, the officers discovered powder cocaine, crack cocaine, drug paraphernalia, and a quantity of cash. After this discovery, the officers collectively agreed to falsely claim that they found the contraband in Powell's possession and within the scope of the warrant.

Powell was then arrested and taken into custody. In connection with Plaintiff's arrest and detention, the officers prepared false arrest paperwork and forwarded it to an Assistant District Attorney at the Office of the Special Narcotics Prosecutor. In particular, Agent Maher signed off on paperwork that contained false and misleading information, even though he knew it would be used to prosecute Plaintiff. That is precisely what happened. Plaintiff was charged and indicted on five counts in New York state criminal court, and remained in custody. In those criminal proceedings, Plaintiff's attorney moved to suppress all the property seized from the third floor of the apartment. In response, the prosecutor denied that any of the evidence had been seized unlawfully, citing a review of police reports and "discussions with the police officers involved in this matter," which included discussions with Tamweber and Maher. SAC ¶ 112. As a result of a court-ordered inspection of the apartment and review of photos taken during the seizure, the prosecution conceded that the contraband had been seized from the third floor and all criminal charges were dismissed on September 12, 2018.

Plaintiff filed this suit in December 2019. Soon after, individual defendant Johanna Santos filed a motion to dismiss. I issued the Santos MTD Opinion on August 31, 2020 and Plaintiff filed an Amended Complaint to reflect that opinion the following month. *See Powell v. United States*, 2020 WL 5126392 (S.D.N.Y. Aug. 31, 2020). On June 30, 2021 Plaintiff filed a Second Amended Complaint ("SAC"), which added Joseph Tamweber and Edward Maher as defendants. At the relevant times, Agent Tamweber was an Agent of the

DEA's New York Drug Enforcement Task Force and Agent Maher was an Agent and a General Supervisor of the same task force. Plaintiff named Tamweber and Maher as defendants in Count IV, alleging a Fourth Amendment false arrest claim; Count V, alleging a Fourth Amendment malicious prosecution claim; and Count VI, alleging a Fifth Amendment due process deprivation of Plaintiff's right to a fair trial. The SAC also alleged a supervisory liability claim against Maher, but Plaintiff withdrew that claim in the opposition to the instant motions to dismiss. *See* Opp. Br. at 8. Plaintiff maintains that each of Counts IV, V, and VI is actionable under *Bivens*.

## DISCUSSION

For the most part, Defendants' arguments tread little new ground. In the Santos MTD Opinion, I directly addressed the same arguments Defendants raise now with respect to *Bivens*. Although Defendants purport to provide additional factors that counsel hesitation in extending *Bivens*, their "new reasons" are unpersuasive and I decline to alter my previous ruling. Likewise, Defendants argue the SAC fails to allege the individual involvement of Tamweber and Maher in the conduct at issue in Counts IV, V, and VI—a claim I already rejected with respect to the pleading concerning Santos. Defendants also raise a statute of limitations defense I have not previously considered, but that argument is unpersuasive.

I. **Legal Standard for a Motion to Dismiss**

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For purposes of this motion, I assume all factual allegations in the SAC are true, and draw all reasonable inferences in Plaintiff's favor. *See Khodeir v. Sayyed*, 323 F.R.D. 193, 198, 200–01 (S.D.N.Y. 2017).

3

## II. The Statute of Limitations Does Not Bar Plaintiff's Claims

All of Plaintiff's claims now at issue were timely filed. Defendants argue that Counts IV and VI are time-barred by the applicable statute of limitations. The parties agree that both claims are governed by New York's three-year statute of limitations for personal injury actions.[2] With respect to Count IV, the parties agree that Plaintiff's claim accrued on April 19, 2018 but that the SAC naming Tamweber and Maher was not filed until June 30, 2021. The parties dispute whether Count VI accrued when Plaintiff learned or should have learned the evidence was fabricated—June 14, 2018, at the latest—or when the criminal proceedings terminated in a defendant's favor—September 14, 2018.

### A. The Count IV False Arrest Claim

Plaintiff's Count IV claims were timely filed because New York State Executive Order No. 202.8, 9 NY ADC 8.202.8 ("EO 202.8"), a pandemic measure, and several subsequent executive orders tolled the statute of limitations for a total of 228 days. *See Brash v. Richards*, 149 N.Y.S.3d 560, 560 (N.Y. App. Div. 2d Dep't 2021). That 228-day toll was sufficient to preserve Plaintiff's Count IV false arrest claim, which was otherwise filed approximately 70 days late.

Defendants argue that Plaintiff cannot avail himself of EO 202.8 and the related orders because those orders suspended, but did not toll, the state of limitations in New York. "Unlike a toll, a suspension does not exclude its duration from the calculation of the relevant time period. Rather, a suspension delays the expiration of the time period until the end date of the suspension." *Brash*, 149 N.Y.S.3d at 561. Defendants' argument fails. *Brash* is directly on point, and squarely held that "the subject executive orders constitute a toll of such filing deadlines." *Id.* at 560. I am "bound to apply the law as interpreted by a state's intermediate

---

[2] For *Bivens* actions, federal courts "borrow the state law of limitations governing an analogous cause of action." *Board of Regents v. Tomanio*, 446 U.S. 478, 485 (1980); *see also Chin v. Bowen*, 833 F.2d 21, 23–24 (2d Cir. 1987).

4

appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010).  Accordingly, *Brash* is controlling.  Even if it were not, I would hold just as the court did in *Brash*. EO 202.8 itself used the word "toll" in its operative language: "the [applicable deadline for filing] is hereby tolled from the date of this executive order." EO 202.8; *see also* Executive Order 202.72, 9 NY ADC 8.202.72 (describing EO 202.8 as a suspension "that tolled any specific time limit for the commencement, filing, or service of any legal action").  At least one other judge in this district reached the same conclusion.  *See Barnes v. Uzu*, 2022 WL 784036 (S.D.N.Y. Mar. 15, 2022) (holding relevant executive orders constituted a toll, rather than a suspension, of the statute of limitations for federal causes of action governed by New York statutes of limitations).

### B.  The Count VI Due Process Claim

The Count VI due process claim is timely both because the Count VI claim was filed within the three-year statute of limitations and because the 228-day toll of EO 202.8 preserved that claim.

In *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019), the Supreme Court held that a fabricated evidence due process deprivation claim accrues when the criminal proceedings terminate against the defendant.  In reaching that determination, the Court reasoned that "malicious prosecution is the most analogous common-law tort" and applied the time of accrual for that tort to a fabricated evidence claim.  *Id.*  The Second Circuit, adopting that reasoning, squarely held that "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, will the statute of limitations begin to run."  *Smalls v. Collins,* 10 F. 4th 117, 135 (2d Cir. 2021) (quoting *McDonough*, 139 S. Ct. at 2158).

While Maher's Reply Brief withdrew his argument that Count VI was untimely based on *Smalls*, Tamweber continues to press this argument.  Tamweber's argument is meritless

5

given the Second Circuit's clear holding that *McDonough* "announce[d] a new accrual rule for fabricated-evidence claims." *Id.* at 136. Plaintiff's claim is thus timely; it did not accrue until the criminal proceeding terminated on September 14, 2018, and the SAC was filed within three years of that date.

Even if the claim had accrued on June 14, 2018, the claim would nonetheless be preserved for the same reason the Count IV claim is timely. EO 202.8 tolled the state of limitations for 228 days, far more than 16 days by which Tamweber claims Count VI was late.

### III. Counts IV, V and VI are Viable *Bivens* Claims

In the Santos MTD, I held that Plaintiff's *Bivens* claim for false arrest was not a new *Bivens* context and that Count IV presented a viable *Bivens* claim. With respect to Counts V and VI, I concluded that although those claims presented a new *Bivens* context, no special factors counseled hesitation and Plaintiff's claims could proceed. Defendants now urge me to revisit those conclusions, unpersuasively pointing to factors Santos did not raise and that purportedly counsel hesitation in extending *Bivens*. I decline to revisit my prior holding and find that there are no meaningful differences between Santos, Tamweber, and Maher when it comes to extending *Bivens* to Counts V and VI.

### A. Legal Framework for *Bivens* Claims[3]

In *Bivens*, the Supreme Court held that "a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages . . . even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). The Court subsequently extended *Bivens* to "cover two additional constitutional claims: in *Davis v. Passman*, 442 U.S. 228 (1979), a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468 (1980), a federal

---

[3] The discussion in this section is drawn from the Santos MTD Opinion. I set it forth here to provide the framework for my discussion of Plaintiff's *Bivens* claims.

prisoner's Eighth Amendment claim for failure to provide adequate medical treatment." *Id.* But after recognizing these three *Bivens* claims, "the Court changed course." *Id.*

The Court has explained that "*Bivens*, *Davis*, and *Carlson* were the products of an era when the Court routinely inferred 'causes of action' that were 'not explicit' in the text of the provision that was allegedly violated," and that, "[i]n later years, [the Court] came to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power." *Id.* (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017)). Accordingly, the Court has expressed its "reluctan[ce] to create new causes of action," recognizing that "Congress is best positioned to evaluate 'whether, and the extent to which, . . . liabilities should be imposed upon individual officers and employees of the Federal Government.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1856). In light of this "change in the Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quotation marks omitted).

If anything, "disfavored" understates the change of course. The Court has "gone so far as to observe that if 'the . . . three *Bivens* cases had been . . . decided today,' it is doubtful that [the Court] would have reached the same result." *Hernandez*, 140 S. Ct. at 742–43 (quoting *Abbasi*, 137 S. Ct. at 1856) (some alterations omitted). This observation tracks history: For "almost 40 years," the Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Id.* at 743. In all, when facing *Bivens* claims in the modern era, the Court's main "watchword is caution." *Id.* at 742; *see Abbasi*, 137 S. Ct. at 1856 (cautioning against creating additional implied remedies "no matter how desirable that might be as a policy matter").

The Supreme Court's decision in *Abbasi* outlines a "two-step framework for determining whether a *Bivens* remedy may properly be implied." *Bueno Diaz*, 2020 WL 1082482, at *3, 442 F.Supp. 3d 701 (S.D.N.Y 2020). At the first step, "a court must decide whether a plaintiff seeks damages in a new *Bivens* context," and to do so, "must evaluate

7

whether 'the case is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court.'" *Id*. (quoting *Abbasi*, 137 S. Ct. at 1859). Although the Court has not yet "endeavor[ed] to create an exhaustive list of differences that are meaningful enough to make a given context a new one," it has provided some instructive examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859–60. The Court has stressed that its "understanding of a 'new context' is broad." *Hernandez*, 140 S. Ct. at 743. While "[s]ome differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context," *id.* at 1865, the "new context" test is not demanding and can be satisfied even with minor extensions and even where the claim arises out of the same constitutional provision as was previously recognized under *Bivens*. *See Abbasi*, 137 S. Ct. at 1864 ("[E]ven a modest extension is still an extension."); *Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

If a given claim "does not present a new *Bivens* context, then such relief is not precluded, and the court may evaluate the claim for damages on the merits." *Bueno Diaz*, 2020 WL 1082482, at *3. If, on the other hand, "the court determines that the context is new, then it must proceed to analyze whether there are 'special factors counseling hesitation in the absence of affirmative action by Congress.'" *Id*. (quoting *Abbasi*, 137 S. Ct. at 1857). This analysis comprises the second step of the *Abbasi* framework.

The "special factors" step of the test assesses "whether there are any factors that 'cause a court to hesitate before' 'allowing a damages action to proceed.'" *Bueno Diaz*, 2020 WL

1082482, at *6 (quoting *Abbasi*, 137 S. Ct. at 1858). This analysis "is focused on 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Id*. (quoting *Abbasi*, 137 S. Ct. at 1858). As with the first step of the *Abbasi* framework, the Court has "not attempted to create an exhaustive list of factors that may provide a reason not to extend *Bivens*," but has highlighted as useful touchstones, the "risk of interfering with the authority of the other branches," any reason to believe that "Congress might doubt the efficacy or necessity of a damages remedy," and the existence of alternative means of recovery. *Hernandez*, 140 S. Ct. at 743, 749; see also *Abbasi*, 137 S. Ct. at 1863, 1865 (noting that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action" and "when alternative methods of relief are available, a *Bivens* remedy usually is not").

Even before *Abbasi* and *Hernandez* underscored the restrictiveness of the *Bivens* inquiry, the Second Circuit sitting en banc concluded that "the only relevant threshold—that a factor 'counsels hesitation'—is remarkably low. It is at the opposite end of the continuum from the unflagging duty to exercise jurisdiction." *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009). Hesitation is "a pause, not a full stop, or an abstention; and to counsel is not to require." *Id*. As such, hesitation is counseled "whenever thoughtful discretion would pause even to consider." *Id*. Whatever its precise contours, "'[s]pecial factors' is an embracing category." *Id.* at 574.

## B.  Count IV Does Not Present a New *Bivens* Context

I previously held that "the similarity of *Bivens* and this dispute is readily apparent" and that "Powell's false arrest claim is squarely within the context faced in *Bivens* and as such does not present a 'new context.'"  Santos MTD Op. at 11.  At its core, Plaintiff's Count IV claim seeks to remedy an injury caused by "officers who violated the prohibition against unreasonable search[es] and seizures." *Abbasi*, 137 S. Ct. at 1854.  Neither Maher nor Tamweber offers a persuasive reason for me to change this conclusion.  *See also Turner v.*

9

*Dellapia*, 498 F.Supp.3d 500, 509–10 (S.D.N.Y. 2020) (action arising from an unlawful search did not present a new *Bivens* context).

Defendant Tamweber argues that because paragraph 150 of the SAC states that the Defendants acted "under color of state law," rather than "under color of federal law," Count IV presents a new *Bivens* context. In response, Plaintiff maintains that the use of "under color of state law" in that paragraph is a drafting error, and seeks leave to correct the error in a Third Amended Complaint. The use of "state law" rather than "federal law" does appear to be a drafting error. Plaintiff does not purport to advance any argument that Defendants Maher and Tamweber acted under color of state law, and elsewhere in the SAC Plaintiff alleges that Defendants Tamweber and Maher acted "under color of federal law." *See* SAC ¶¶ 19–20, 129, 155, 162. Plaintiff is granted leave to correct this error in a Third Amended Complaint.

Tamweber also argues that Count IV presents a new *Bivens* context by relying on out of circuit precedent, including *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019). I decline to follow that non-precedential authority and instead agree with the Sixth and Ninth Circuits, which have both concluded *Bivens* provides a cause of action for false arrest, fabrication of evidence, and malicious prosecution claims. *See Jacobs v. Alam*, 915 F.3d 1028, 1036–39 (6th Cir. 2019) (finding *Bivens* claims for false arrest, fabrication, and malicious prosecution viable post-*Abbasi* and *Hernandez*); *Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) (recognizing falsification of evidence by an ICE attorney presented a new *Bivens* context but concluding no special factors counseled hesitation.

C. **Extension of *Bivens* to Counts V & VI**

I previously concluded that "no special factors counsel hesitation toward extension of *Bivens*" to the narrow circumstances at issue here: federal law enforcement officers fabricating evidence in furtherance of a malicious prosecution and denial of due process rights, in direct violation of the Fourth and Fifth Amendments. Seeking to convince me to change that

10

conclusion, Defendants offer several reasons that, they claim, counsel hesitation.  I am not persuaded.

*First*, Defendants argue alternative remedies to *Bivens* exist.  The identify (1) the FTCA, (2) federal criminal processes, which allow wrongfully accused defendants to move for dismissal, (3) the ability for criminal defendants to receive attorney's fees pursuant to the Hyde Amendment, (4) the availability of the writ of habeas corpus for those in custody, and (5) employment penalties for officers who fabricate or falsify evidence.

With respect to the FTCA, I concluded that "the FTCA aims to protect citizens from a different form of harm [than *Bivens*] and does so without holding responsible individual officers—as the Supreme Court has explained, this divergence renders *Bivens* and the FTCA 'parallel,' nonfungible causes of action." Santos MTD Op. at 17 (citing *Carlson*, 446 U.S. at 20 (it is "crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action")).  In arguing that I should reevaluate my conclusion that the FTCA does not counsel hesitation, Tamweber points to the FTCA's "judgment bar," which bars any action "by reason of the same subject matter[] against the employee of the government whose act or omission gave rise to the claim."  28 U.S.C. 2676.  But the judgment bar is designed to prevent the same Plaintiff from bringing duplicative claims against first the United States and then its employees. *See Simmons v. Himmelreich,* 578 U.S.621,630 n.5 (2016) ("The judgment bar provision applies where a plaintiff first sues the United States and then sues an employee.")  Such a bar is not relevant here, where (1) Plaintiff has sued the United States and its employees in the same action, (2) Plaintiff alleges different causes of action against each, and (3) Plaintiff has not yet obtained judgment against the United States or any of its employees.

Defendants' remaining "special factors" are equally unpersuasive.  The existence of criminal processes, such as the ability of defendants to move to suppress unlawfully obtained evidence, is of little relevance here.  Ending an unlawful prosecution and releasing a defendant

11

from custody may halt an ongoing rights deprivation, but that does nothing to address the past wrongs a defendant endured by reason of falsified evidence and a malicious prosecution. Remedying those past wrongs is the very point of *Bivens*. Similarly, the Hyde Amendment does not counsel hesitation here, where Plaintiff was not actually prosecuted by the federal government, but by the State of New York. Additionally, Plaintiff does not seek to cure prosecutorial misconduct, which the Hyde Amendment would address, but misconduct by the officers who caused the prosecutor to initiate the case. Likewise, the Unjust Conviction and Imprisonment Statute does not apply to Plaintiff because he was not accused of crimes against the United States and was never convicted. *See* 28 U.S.C. 2513(b).

By the same token, the writ of habeas corpus, at least in the context relevant here, is not an alternative remedy to *Bivens* because Plaintiff is not in custody so there is no relief habeas can provide. *See* 28 U.S.C. §§ 2254, 2255. In any case, habeas and a *Bivens* claim provide distinct forms of relief: habeas seeks to remedy ongoing harm through release from unlawful incarceration, while *Bivens* seeks to remedy past harm through compensation for that harm. *See Engels v. Buchan*, 710 F.3d 698, 706 (7th Cir. 2013). Even accepting that the habeas remedy provides some incentive for law enforcement to comply with the mandates of the constitution—and Defendants have provided no reason that it does—habeas does not serve a compensatory function and does not provide law enforcement with a financial incentive to act within the bounds of the constitution.

For a similar reason, administrative penalties against officers who fabricate evidence or instigate malicious prosecutions do not serve as adequate alternative remedies to *Bivens*. First, those remedies do not compensate the defendants who suffered the wrongdoing. Second, prosecuting offending officers or removing them from their positions vindicates the interests of the public writ large, but not the particular interests of wronged defendants. Perhaps more importantly, the existence of civil administrative penalties does not address my concern

12

that there is a strong judicial interest in checking malicious prosecution and ensuring due process rights before and during trial. *See* Santos MTD Op. at 20–21 (citing *Lanuza*, 899 F.3d at 1032–33; *Lanning v. City of Glens Falls*, 908 F.3d 19, 25–28 (2d Cir. 2018)).

*Second*, Tamweber argues that Plaintiff's purported failure to allege his personal involvement in the wrongs detailed in Counts V and VI counsels hesitation. That argument, however, goes to the adequacy of the SAC in a 12(b)(6) analysis; it says nothing about whether malicious prosecution or deprivation of a fair trial right are actionable under *Bivens*. Even if that were a factor to consider, as discussed below, Plaintiff has adequately alleged the personal involvement of Tamweber and Maher in all three counts.

## IV. Plaintiff Adequately Alleges Defendants' Personal Involvement

Although I rejected Santos' argument that Plaintiff did not sufficiently allege her involvement, Defendants Tamweber and Maher raise much the same claims. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (discussing pleading requirement in § 1983 action) (quotation marks omitted). Plaintiff has carried his burden on this point. The SAC specifies the involvement of each of Tamweber and Maher at every stage of the wrongful proceedings—from the search of Plaintiff's apartment building to making false representations to the prosecutor—and Plaintiff's allegations are sufficient to satisfy Rule 12(b)(6).

### A. Count IV

The SAC alleges that Agents Maher and Tamweber, acting with other officers, "deliberately went beyond the scope of the search warrant to search the third-floor premises." SAC ¶ 59. The SAC further alleges that based on the evidence discovered there, Agents Maher and Tamweber, along with the other officers, "agreed to falsely claim that they had recovered the drugs and other criminal evidence in Mr. Powell's possession within the bounds of their warrant

13

on the first and second floors at 3410 Barker Avenue." *Id.* ¶ 70.  Plaintiff was then arrested on the basis of the illegally seized evidence and the false claim that the evidence had been in Plaintiff's possession.  The paragraphs in question specify Tamweber and Maher by name and are sufficient for Plaintiff's Count IV claim to move forward.  Tamweber's additional argument that Count IV alleges the Defendants acted under color of state law renders that Count implausible is rejected for the same reasons as discussed above.

### B. Counts V & VI

Counts V and VI arise out of the same wrongful conduct but are nonetheless independently actionable.  Though the same wrongful conduct often gives rise to malicious prosecution and fair-trial claims, such claims "arise out of different constitutional rights, protect against different constitutional injuries, and implicate different constitutional concerns." *Smalls* 10 F. 4th at 135 (quoting *Simon v. City of New York*, 2020 WL 1323114, at *6 (E.D.N.Y. Mar. 19, 2020)).  Thus, the same factual allegations are sufficient to support Counts V and VI even though the claims themselves are distinct.

Here, the SAC alleges that Agents Maher and Tamweber "prepared false and misleading arrest paperwork which was forwarded to an Assistant District Attorney at the Office of the Special Narcotics Prosecutor" and that the paperwork "contained knowingly false statements to incriminate Mr. Powell and omitted material information that was exculpatory to him."  SAC ¶¶ 74–75.  Tamweber relies on *Breton v. City of New York*, 404 F. Supp. 3d 799, 815 (S.D.N.Y. 2019) to argue the allegations against him are impermissibly vague.  But on the very page Tamweber cites from that case, the court found that alleging that "each" of the defendants "participated in the fabrication of evidence" and that those defendants "forwarded the misleading evidence to the prosecutors" satisfied the *Iqbal* pleading requirements.  *Id.*  The SAC also alleges that the prosecutor continued the prosecution, at least in part, based on "discussions with the police officers involved in this matter," which included Maher and Tamweber.  SAC ¶¶ 112–13.

14

Tamweber also argues that it is "implausible" a federal agent could induce a state prosecution. But that is not the inquiry for a motion to dismiss. In any case, the SAC alleges that Tamweber and Maher were working as part of the DEA's New York Drug Enforcement Task Force. SAC ¶¶ 19–20. Given that the agents were working on a task force in conjunction with state and local law enforcement officials, it is plausible to infer that either or both would cooperate with state-level prosecutors in carrying out the mission of the task force. At this stage, Plaintiff has alleged enough to state a claim with respect to Counts V and VI.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are denied. Plaintiff shall file a Third Amended Complaint that withdraws his supervisory liability claim against Maher and replaces the phrase "under color of state law" with "under color of federal law" in paragraph 149. The Clerk shall terminate ECF Nos. 133 and 134.

SO ORDERED.

Dated: May 24, 2022
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge